**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNY FLORES, ARIEL GOMEZ and DERRICK LEWIS, for themselves and others similarly situated, | ) ) ) | |
| | ) | Case No. 1:20–cv–01128 |
| Plaintiffs, | ) | |
| | ) | Judge Charles R. Norgle, Sr. |
| v. | ) | |
| | ) | |
| MOTOROLA SOLUTIONS, INC. and VIGILANT SOLUTIONS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MOTOROLA SOLUTIONS, INC.'S AND
VIGILANT SOLUTIONS, LLC'S ANSWER AND AFFIRMATIVE
DEFENSES TO THE FIRST AMENDED CLASS ACTION COMPLAINT**

Defendants Motorola Solutions, Inc. ("Motorola") and Vigilant Solutions, LLC

("Vigilant," and together with Motorola ("Defendants")), hereby answer the First Amended Class

Action Complaint (the "Amended Complaint") of Plaintiffs Johnny Flores, Ariel Gomez, and

Derrick Lewis (together, "Plaintiffs") as follows:

**INTRODUCTION[1]**

1.      Every individual has unique features by which he or she can be identified using a set of standard quantitative measurements, commonly referred to as "biometric identifiers." For example, the shape of and distance between tiny ridges on each person's finger are unique, so measures of these features can be used to identify a specific individual as the person who made a fingerprint. Similarly, each person also has a unique facial geometry composed of, among other measures, distances between key facial landmarks and ratios between those distances. Once a picture of person's face is scanned and those biometric measurements are captured, computers can store that information and use it to identify that individual any other time that person's face appears on the internet, in a scanned picture, and potentially in any of the billions of cameras that are constantly monitoring our daily lives. Unlike fingerprints, however, facial biometrics are readily

---

[1] For ease of reference, Defendants have included in this Answer the captions and headings used in the Amended Complaint, but do not thereby admit the truth of any allegations in the captions and headings or any inference that could be drawn from those captions and headings. For the avoidance of doubt, Defendants deny that Plaintiffs are entitled to any relief from Defendants and, unless expressly admitted below, Defendants deny each and every allegation in the Amended Complaint.

observable and, thus, present an even graver and more immediate danger to privacy, individual autonomy, and liberty. This fact about human facial geometry, the technologies that record it, and the opportunities for surveillance these technologies enable present grave challenges to traditional notions of privacy that people have expected since time immemorial.

**ANSWER:** Defendants admit that the allegations in Paragraph 1 purport to describe certain aspects of biometrics and biometric technologies. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding fingerprints, and therefore deny those allegations. With respect to the allegations in Paragraph 1 regarding "facial biometrics" and related technology, Defendants deny that such allegations are accurate and complete, and deny that Paragraph 1 accurately describes "biometric identifiers." Defendants deny that the alleged facial recognition technology at issue in this matter creates either "opportunities for surveillance" or "grave challenges to traditional notions of privacy." Answering further, Defendants admit that facial recognition technologies, when designed and used responsibly, create substantial benefits for society, such as when they are used by law enforcement officers to help them apprehend persons suspected of committing violent crimes, locate and protect victims of crimes, and otherwise serve public safety. For example, federal, state, and local law enforcement agencies currently are using facial recognition technology to assist with the identification of those who raided the U.S. Capitol building on January 6, 2021. Law enforcement and victim advocates also use facial recognition to identify young women who have been trafficked and sexually abused, and to reunite them with their families. Moreover, when designed and used responsibly, facial recognition technologies are less prone to bias and error than humans performing the same type of functions without such technology. Defendants deny the remaining allegations of Paragraph 1.

2.      As the Illinois General Assembly has found: "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

2

**ANSWER:** Defendants admit that the language quoted in Paragraph 2 appears in 740 ILCS § 14/5(c). Answering further, Defendants admit that, in 740 ILCS 14/5, the Illinois General Assembly also recognized that biometric technologies can benefit society, expressly including in connection with security screenings, and that the regulation of certain biometric technologies is important so that consumers do not withdraw from biometric-facilitated transactions. Defendants deny the remaining allegations of Paragraph 2.

3. Pursuant to Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS §14/1, *et seq.*, Illinois prohibits private entities from, among other things, collecting, capturing, obtaining, disclosing, redisclosing, disseminating, or profiting from the biometric identifiers or information of an individual without providing written notice and without obtain a written release from the impacted individual or his authorized representative. BIPA also requires private entities in possession of biometric identifiers to adopt retention and destruction policies and to take measures to prevent the release of that information.

**ANSWER:** Defendants admit that the allegations of Paragraph 3 purport to describe the requirements of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), but deny that such description is accurate and complete. Defendants deny the remaining allegations of Paragraph 3.

4. In violation of BIPA, Defendants Motorola and Vigilant collected, captured, obtained, disclosed, redisclosed, disseminated, and profited from the facial geometric scans of at least tens of thousands of Illinois residents in violation of BIPA's requirements. Specifically, Vigilant, with Motorola later joining, collected and presently maintain a "gallery" of over 18 million booking photographs or "mugshots" which is expanding all the time. The "gallery" includes at least tens of thousands of Illinois residents (many of whom were innocent and/or have had their records expunged by court order). Defendants have extracted the facial biometrics of each such person without permission.

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants admit that Vigilant developed, and that Defendants currently provide to law enforcement agencies pursuant to government contracts, a product known as "FaceSearch," which is a tool that law enforcement agencies use to access and search an "image gallery" of publicly available "booking photographs" taken by law enforcement agencies and correctional authorities. Defendants further admit that

3

booking photographs have long been used by law enforcement to assist crime victims, witnesses, and law enforcement officers to identify potential suspects in criminal investigations. Defendants further admit that the FaceSearch "image gallery" currently contains more than 18 million publicly available police, jail, and prison photographs. Defendants further admit that FaceSearch is a valuable resource for law enforcement, which permits law enforcement officers to more quickly, efficiently, and accurately identify potential suspects. Defendants deny that the FaceSearch technology "extracts" the "facial biometrics" of any person, deny that the FaceSearch product uses any information that the Illinois General Assembly intended to regulate in the BIPA statute, and deny that Defendants violated BIPA or harmed Plaintiffs or any other putative class member in any way. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 regarding the number of Illinois residents whose booking photographs are included in the FaceSearch image gallery, and therefore deny those allegations. Defendants deny the remaining allegations of Paragraph 4.

5.     In particular, Defendants performed a scan of the facial geometry of each depicted individual, stored the resultant biometric identifiers and information in a proprietary database (the "Biometric Database"), and disclosed, redisclosed, and otherwise disseminated those biometric identifiers and information to third parties in order to profit.

**ANSWER:**    Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 5.

6.     Defendants possess the biometric identifiers and information of the individuals in their Biometric Database without having adopted or made public any policy, written or otherwise, to govern the retention and destruction of thereof.

**ANSWER:**    Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 6.

7.     Defendants engaged in the above-described conduct: (a) without informing the impacted individuals that their biometric identifiers and information were being collected, captured, obtained, disclosed, redisclosed, and otherwise disseminated; (b) without informing the impacted individuals in writing of the purpose of the collection, capture, obtainment, disclosure, redisclosure,

or dissemination of the biometric identifiers and information; and (c) without seeking or obtaining written releases from such impacted individuals or their authorized representatives.

**ANSWER:** Defendants deny that the FaceSearch technology uses any information that is subject to regulation under BIPA, and deny that Defendants violated BIPA or harmed Plaintiffs or any other putative class members in any way. Defendants deny the remaining allegations of Paragraph 7.

8. In violation of BIPA, Defendants have also profited, and continue to profit, from their unlawful collection, possession, disclosure, and dissemination of the biometric identifiers and information of Plaintiffs and members of the proposed class (the "Class Members"). For a fee, Defendants offered, and continue to offer, law enforcement agencies and others throughout the country the opportunity to access and use their Biometric Database as a "facial search engine" allowing the identification of persons in the database. Defendants also incorporated, and continue to incorporate, the Biometric Database into their other facial recognition products, thereby allowing the real and near-real time identification and tracking of millions of people—including Plaintiff and Class Members—wherever they may go.

**ANSWER:** Defendants deny that they violated BIPA in any way. Further answering, Defendants reassert and incorporate herein their responses to Paragraph 4 above. Defendants deny the remaining allegations of Paragraph 8.

9. To be included in Defendants' Biometric Database, a person merely had to have been arrested. To Defendants, it did not and does not matter whether that arrest resulted in a conviction or had been made in error or whether the booking photo has been expunged. Thus, like the guests of the Hotel California, Plaintiffs and Class Members can never leave, at least not until this Court grants the requested relief.

**ANSWER:** Defendants admit that Plaintiffs allege herein that their photographs were taken by state or local law enforcement agencies and/or correctional authorities in connection with their arrests and/or incarcerations and made available to the public by such law enforcement agencies and/or correctional authorities. Defendants further admit that the creation and publication of booking photographs by law enforcement agencies and correctional authorities was lawful, and that Defendants' subsequent acquisition of such photographs was lawful. Defendants further admit that the FaceSearch tool permits users to view information that law enforcement agencies and

correctional authorities make available to the public regarding arrests, convictions, and incarcerations. Defendants admit that Plaintiffs refer to a lyric from the song *Hotel California*, but deny that the lyric has anything to do with the circumstances under which law enforcement agencies and correctional authorities take and publish booking photographs, or the access that the FaceSearch product provides law enforcement agencies to such booking photographs. Defendants deny the remaining allegations of Paragraph 9.

10.     As the Illinois General Assembly has found and the Illinois Supreme Court has confirmed, the harm to Plaintiffs and Class Members has already occurred.

**ANSWER:**     Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 10.

11.     Public policy in Illinois provides that given the risks of unwanted data collection and disclosure, its residents need the power to make decisions about the fate of their unique biometric identifiers and information. Illinois residents do not lose their statutorily guaranteed rights to control their biometric identifiers and information merely because their image appeared in a booking photo.

**ANSWER:**     Defendants admit that the allegations of Paragraph 11 purport to describe the public policy of the State of Illinois, but deny that such allegations accurately and completely describe such public policy, and deny that the FaceSearch product uses any information that constitutes "biometric identifiers" or "biometric information" under BIPA. Defendants deny the remaining allegations of Paragraph 11.

12.     As a direct result of Defendants' actions, Plaintiffs' and Class Members' biometric identifiers and information are no longer under their control and are now available to a potentially unlimited range of unknown individuals—including employees, agents and clients of Defendants—who can surveil Plaintiffs and Class Members now and in the future. The injuries described herein are imminent and certainly impending.

**ANSWER:**     Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 12.

13.     Plaintiffs bring this First Amended Class Action Complaint seeking: (a) statutory damages of $5,000 per BIPA violation, or in the alternative, $1,000 per BIPA violation, from each

6

of the Defendants, along with attorneys' fees and costs; (b) disgorgement of Defendants' ill-gotten gains derived from the unlawful collection, possession, sale, disclosure, redisclosure, and dissemination of the unlawfully-acquired data; and (c) an injunction ordering that Defendants delete the data from its database.

**ANSWER:**     Defendants admit that the allegations of Paragraph 13 purport to describe the relief that Plaintiffs are seeking, but deny that Plaintiffs are entitled to such relief or any other relief in this action. Defendants deny the remaining allegations of Paragraph 13.

**PARTIES**

14.     Plaintiff Derrick Lewis is an Illinois resident. At times relevant to this case, Mr. Lewis was incarcerated at the Illinois Department of Corrections and at the Cook County Jail, including on charges of which he was innocent but that, nevertheless, resulted in convictions that have subsequently been vacated on the basis of innocence and expunged. Those entities made the booking photographs of Mr. Lewis and all detainees searchable on their websites. On information and belief, Defendants are in possession of Mr. Lewis' booking photograph(s), have used such image(s) to extract his biometric identifiers and are currently in possession of his biometric identifiers and information.

**ANSWER:**     Defendants deny that they "extracted" or are "in possession of" any "biometric identifiers" or "biometric information" of Plaintiff Derrick Lewis. Defendants admit that they are in possession of publicly available booking photographs for one or more persons named "Derrick Lewis," but lack knowledge or information sufficient to form a belief as to whether any of those booking photographs are of Plaintiff Derrick Lewis, and therefore deny those allegations. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14, and therefore deny those allegations.

15.     Plaintiff Johnny Flores is an Illinois resident. At times relevant to this case, Mr. Flores was incarcerated at the Illinois Department of Corrections on a charge of which he was innocent. He was released in November of 2018 and is challenging his conviction in a post-conviction proceeding. A booking photograph of Mr. Flores remains on the Illinois Department of Corrections' website to this day. On information and belief, Defendants are in possession of Mr. Flores' booking photo(s), have used such image(s) to extract his biometric identifiers and are currently in possession of his biometric identifiers and information.

**ANSWER:**     Defendants deny that they "extracted" or are "in possession of" any "biometric identifiers" or "biometric information" of Plaintiff Johnny Flores. Defendants admit

that they are in possession of publicly available booking photographs for one or more persons

named "Johnny Flores," but lack knowledge or information sufficient to form a belief as to whether

any of those booking photographs are of Plaintiff Johnny Flores, and therefore deny those

allegations. Defendants lack knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in Paragraph 15, and therefore deny those allegations.

16.     Plaintiff Ariel Gomez is an Illinois resident. At times relevant to this case, Mr.
Gomez was incarcerated at the Illinois Department of Corrections on a charge of which he was
innocent. After 20 years of incarceration for a crime he did not commit, his conviction was vacated
and the charges against him dismissed. On information and belief, Defendants are in possession of
Mr. Gomez's booking photo(s), have used such image(s) to extract his biometric identifiers and
are currently in possession of his biometric identifiers and information.

**ANSWER:**     Defendants deny that they "extracted" or are "in possession of" any

"biometric identifiers" or "biometric information" of Plaintiff Ariel Gomez. Defendants deny that

they are in possession of any booking photographs of Plaintiff Ariel Gomez. Defendants lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 16, and therefore deny those allegations.

17.     Plaintiffs seek to represent a class of current and former residents of Illinois whose
pictures appear in Defendants' Biometric Database.

**ANSWER:**     Defendants admit that, in Paragraph 17, Plaintiffs allege that they seek to

represent a class of persons, and describe that class, but deny that such a purported class, or any

other class, should be certified in this case. Defendants deny the remaining allegations of

Paragraph 17.

18.     Defendant Motorola Solutions, Inc. is a Delaware Corporation with its principal
place of business in Chicago, Illinois.

**ANSWER:**     Defendants admit the allegations of Paragraph 18.

19.     Defendant Vigilant Solutions, LLC is a Delaware corporation, wholly owned by
Defendant Motorola.

**ANSWER:**     Defendants admit that Vigilant is a Delaware limited liability company and that it is a wholly-owned subsidiary of Motorola. Defendants deny the remaining allegations of Paragraph 19.

20.     On or about January 2019, Defendant Vigilant became a part of Defendant Motorola. Much of the marketing takes place in and touts the companies' connection to each other and to Illinois. For example, Vigilant's LinkedIn banner states: "Now Part Of The Motorola Solutions Platform." The famous Motorola logo appears higher on Vigilant's LinkedIn page than does its own obscure logo. Similarly, the banner portion of Vigilant's Twitter page displays the phrase "Vigilant from Motorola Solutions." The company recently tweeted a photograph of the Chicago skyline, lakefront and Lake Shore Drive with the caption: "From Our Home To Yours, Wishing You a Happy Thanksgiving. Vigilant Solutions."

**ANSWER:**     Defendants admit that, in January 2019, Motorola acquired VaaS International Holdings, Inc. ("VaaS"), and that one of the subsidiaries of VaaS that was included in the acquisition was Vigilant. Defendants further admit that the allegations of Paragraph 20 purport to describe information regarding Defendants that was displayed on social media, but deny that such descriptions are complete and accurate. Defendants deny the remaining allegations of Paragraph 20.

21.     Defendants Vigilant and Motorola also recently marketed their facial recognition products at the 2019 International Association of Chiefs of Police ("IACP") convention at McCormick Place in Chicago, Illinois stating: "Vigilant is now part of Motorola Solutions" with a picture of the skyline along the Chicago River. As another example of the companies' partnership and connection to Illinois, Motorola marketed a facial recognition "lunch and learn" on its Twitter feed, held at the Westmont Police Department on February 6, 2020 and at the Rockford Police Department prior to that.

**ANSWER:**     Defendants admit that they marketed certain of their products, including FaceSearch, at the 2019 International Association of Chiefs of Police ("IACP") convention held at McCormick Place in Chicago, Illinois, and that they conducted events at the Westmont Police Department and the Rockford Police Department. Defendants further admit that the allegations of Paragraph 21 purport to describe information displayed in connection with those events, but deny

that such descriptions are complete and accurate. Defendants deny the remaining allegations of

Paragraph 21.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class. On information and belief, based on publicly-available reports, some of the Class Members who were formerly Illinois residents are domiciled in other states. Because it is estimated that the Class will have tens of thousands of members, and Defendants' intentional and reckless violations of BIPA are punishable by statutory damages of $5,000 per violation, the amount in controversy is well in excess of $5,000,000. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

**ANSWER:**     Defendants admit that, based upon Plaintiffs' allegations, this Court has

jurisdiction over this action under 28 U.S.C. § 1332(d)(2) and jurisdiction over Plaintiffs' state law

claim under 28 U.S.C. § 1367. Defendants deny the remaining allegations of Paragraph 22.

23.     This Court has personal jurisdiction over Defendant Motorola because Motorola has its principal place of business in Chicago, Illinois.

**ANSWER:**     Defendants admit the allegations of Paragraph 23.

24.     This Court has personal jurisdiction over Defendant Vigilant because it collected, or participated in collecting, and currently maintains the booking photographs taken of Plaintiffs and Class Members in Illinois. Vigilant knew that its collection, capture, obtainment, disclosure, redisclosure, and dissemination of impacted individuals' biometric identifiers and information would injure Illinois residents. Those unlawful acts, committed in violation of the rights of Illinois residents using the resources of Illinois jurisdictions, are at the center of this suit. Vigilant also conducts its marketing from and within Illinois, as well as in a partnership with Motorola, which is a resident of Illinois. Vigilant also profits by contracting with law enforcement agencies throughout Illinois, including those in Chicago, Burr Ridge, and Rockford, to provide access to its surveillance technology and Biometric Database. Vigilant knew or had reason to know that collecting, capturing, obtaining, disclosing, redisclosing, and disseminating Illinois residents' biometric identifiers and information without providing the requisite consent and obtaining the requisite releases would deprive Illinois residents of their statutorily-protected privacy rights, neutralize Illinois residents' ability to control access to their biometric identifiers and information, and expose Illinois residents to potential surveillance and other privacy harms.

**ANSWER:**     Defendants admit that this Court has personal jurisdiction over Vigilant.

Defendants deny the remaining allegations of Paragraph 24.

25.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claim occurred in Illinois. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendants Vigilant and/or Motorola.

**ANSWER:**     Defendants admit that venue is proper in this Court because this Court has personal jurisdiction over Defendants. Defendants deny the remaining allegations of Paragraph 25.

### ILLINOIS BIOMETRIC PRIVACY LAWS

26.     BIPA seeks to safeguard individuals' biometric identifiers and information.

**ANSWER:**     Defendants admit that the allegations of Paragraph 26 purport to describe the purpose of BIPA, but deny that such description is complete and accurate. Defendants deny the remaining allegations of Paragraph 26.

27.     Biometric identifiers include a scan of an individual's face geometry. 740 ILCS § 14/10.

**ANSWER:**     Defendants admit that the allegations of Paragraph 27 purport to describe a provision of BIPA, but deny that such description is complete and accurate. Defendants deny the remaining allegations of Paragraph 27.

28.     Biometric information is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS § 14/10.

**ANSWER:**     Defendants admit that the allegations of Paragraph 28 purport to describe a provision of BIPA, but deny that such description is complete and accurate. Defendants deny the remaining allegations of Paragraph 28.

29.     Pursuant to BIPA, private entities, such as Defendants, are among other things: (a) prohibited from collecting, capturing, or otherwise obtaining an individual's biometric identifiers and information without providing written notice and obtaining a written release; (b) prohibited from selling, leasing, trading, or otherwise profiting from an individual's biometric identifiers and information; (c) prohibited from disclosing, redisclosing, or otherwise disseminating an individual's biometric identifiers or information in the absence of circumstances specifically set forth in the statute; and (d) required, to the extent it is in possession of biometric identifiers or information, to develop a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying such identifiers and information. 740 ILCS § 14/15.

**ANSWER:** Defendants admit that the allegations of Paragraph 29 purport to describe provisions of BIPA, but deny that such description is complete and accurate. Defendants deny the remaining allegations of Paragraph 29.

30. BIPA provides for a private right of action and allows a prevailing party to recover liquidated damages in the amount of: (a) $1,000 or actual damages, whichever is greater, for negligent violations of its provisions; and (b) $5,000 or actual damages, whichever is greater, for intentional or reckless violations of its provisions. 740 ILCS § 14/20. BIPA also allows for the recovery of attorneys' fees and costs and injunctive relief. 740 ILCS § 14/20.

**ANSWER:** Defendants admit that the allegations of Paragraph 30 purport to describe provisions of BIPA, but deny that such description is complete and accurate. Defendants deny the remaining allegations of Paragraph 30.

## ALLEGATIONS

### I. Allegations Related to Named Plaintiffs

31. Defendants have populated the Biometric Database with over 18 million booking photographs and constantly update it with new photographs as they appear. Among the booking photographs contained in the Biometric Database are those that appear and are searchable on the Illinois Department of Corrections ("IDOC") inmate search website. Defendant Vigilant began obtaining the booking photographs it uses no later than 2014. On information and belief, the Biometric Database includes Plaintiffs' booking photographs because, among other reasons, they were each at an IDOC facility after Vigilant began collecting the booking photographs, and their booking photographs were available on the IDOC website.

**ANSWER:** Defendants admit that the FaceSearch "image gallery" currently contains more than 18 million publicly available police, jail, or prison photographs that were taken and stored by law enforcement agencies. Defendants further admit that the FaceSearch image gallery contains photographs that were made publicly available by law enforcement agencies and correctional authorities, including the Illinois Department of Corrections and the Cook County Jail, on their websites. Defendants further admit that Vigilant created the image gallery in 2014 and began to add booking photographs to the image gallery at that time. Defendants deny the remaining allegations of Paragraph 31.

32. For each of Plaintiffs' booking photographs, Defendants, singularly and/or in concert, scanned Plaintiffs' facial geometry; and included their photographs, biometric information, and other identifying information, such as their names, in the Biometric Database.

**ANSWER:** Defendants deny that they collected, captured, purchased, received through trade, otherwise obtained, or are in possession of Plaintiffs' "biometric identifiers" or "biometric information." Defendants deny the remaining allegations of Paragraph 32.

33. After surreptitiously obtaining Plaintiffs' biometric identifiers and information, Defendants, singularly and/or in concert, disclosed, redisclosed, disseminated, sold, traded, and profited from Plaintiffs' biometric identifiers and information.

**ANSWER:** Defendants deny that they "disclosed, redisclosed, disseminated, sold, traded, and profited from" Plaintiffs' "biometric identifiers" or "biometric information." Defendants deny the remaining allegations of Paragraph 33.

34. To this day, Defendants have: (a) failed and continue to fail to advise Plaintiffs that they were performing scans of their facial geometries; (b) failed and continue to fail to inform Plaintiffs in writing or otherwise of the purpose for which they were collecting, capturing, obtaining, disclosing, redisclosing, and disseminating Plaintiffs' biometric identifiers and information; (c) failed and continue to fail to adopt a policy and to provide publicly-available notice about the length of time Defendants would retain Plaintiffs' biometric identifiers and information and guidelines for how Defendants would destroy those identifiers and information; (d) failed and continue to fail to permanently destroy Plaintiffs' biometric identifiers and information after the initial purpose for collecting and obtaining such biometric identifiers and information has been satisfied and/or within 3 years of Plaintiffs' last interaction with Defendants (which they never was); and (e) never sought, nor received, a written release from Plaintiffs or their authorized representatives that allowed Defendants to collect, capture, obtain, disclose, redisclose, and disseminate Plaintiffs' biometric identifiers and information.

**ANSWER:** Defendants deny that Defendants' actions were subject to BIPA. Defendants deny the remaining allegations of Paragraph 34.

35. Defendants' conduct has injured Plaintiffs or, alternatively, the injury to Plaintiffs is imminent and certainly impending.

**ANSWER:** Defendants deny the allegations of Paragraph 35.

## II. Defendants' Unlawful Conduct

36. Defendants sell a range of surveillance and facial recognition products to government agencies and private companies throughout the United States, including the Motorola

Command Center Software Suite, "FaceSearch" technology, license plate readers, video "Lineups" of real time or near-real time public video, Avigilon, and others.

**ANSWER:** Defendants admit that they sell products to both government agencies and private entities. Defendants further admit that the products they sell include the Motorola Command Center Software Suite, FaceSearch, license plate readers, and Avigilon. Defendants deny that they sell all of their products to both government agencies and private companies, and deny that they have sold the FaceSearch product to any private companies. Defendants deny the remaining allegations of Paragraph 36.

37. According to Defendant Vigilant, the "facial recognition technology utilizes biometric algorithms of facial landmarks to find potential matches to help law enforcement develop strong investigative leads."

**ANSWER:** Defendants admit that the language quoted in Paragraph 37 appears in a document prepared by Vigilant. Defendants deny the remaining allegations of Paragraph 37.

38. When Defendants acquire a mugshot or booking photo, they scan the facial geometry of the individual in the photo so that the resulting biometric identifiers and information can be matched against future unknown individuals.

**ANSWER:** Defendants deny the allegations of Paragraph 38.

39. When one of Defendant's customers uploads a "probe image" to the facial recognition application, the "algorithm creates a face print of the probe image," and "[f]acial recognition compares the probe image against the image gallery," referred to herein as the Biometric Database.

**ANSWER:** Defendants admit that documents prepared by Vigilant contain the language quoted in Paragraph 39, but deny that Paragraph 39 contains a complete description of the FaceSearch technology. Defendants deny the remaining allegations of Paragraph 39.

40. As of 2019, Defendants claimed that the Biometric Database provided access to 18 million open-source images, including "mugshots," against which the "probe images" were, and continue to be, compared.

**ANSWER:** Defendants admit that documents prepared by Vigilant reference the more than 18 million publicly available booking photographs available through the FaceSearch tool, and

the ability to compare "probe images" with the photographs in the image gallery, but deny that Paragraph 40 contains a complete description of the FaceSearch technology. Defendants deny the remaining allegations of Paragraph 40.

41.     At relevant times, the Biometric Database included IDOC booking photographs and, on information and belief, publicly-available booking photographs from other Illinois correctional and law enforcement agencies.

**ANSWER:**     Defendants admit that the FaceSearch image gallery includes booking photographs made publicly available by the IDOC, other Illinois correctional authorities, and law enforcement agencies in Illinois. Defendants deny the remaining allegations of Paragraph 41.

42.     On information and belief, Defendants: (a) acquired Plaintiffs' and Class Members' booking photographs; (b) collected, captured, and otherwise obtained Plaintiffs' and Class Members' biometric identifiers and information from those photographs; and (c) disclosed, redisclosed, disseminated, sold, and otherwise profited from those biometric identifiers and information.

**ANSWER:**     Defendants deny that they acquired Plaintiff Ariel Gomez's booking photograph. Defendants admit that they have acquired publicly available booking photographs of persons named "Derrick Lewis" and "Johnny Flores," but are without knowledge or information sufficient to form a belief as to the truth of the allegations that such booking photographs are of Plaintiff Derrick Lewis and Plaintiff Johnny Flores, and therefore deny those allegations. Defendants further admit that they have acquired publicly available booking photographs of persons arrested and incarcerated in Illinois, but are without knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations that they have acquired booking photographs of the members of the putative class, and therefore deny those allegations. Defendants deny the remaining allegations of Paragraph 42.

43.     Defendants engaged in the above-described conduct without complying with BIPA's notice or consent provisions.

**ANSWER:** Defendants deny that any of their actions were subject to the requirements of BIPA, and deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 43.

44. In collecting, capturing, and otherwise obtaining the biometric identifiers and information of Plaintiffs and Class Members and, subsequently, disclosing, redisclosing, and otherwise disseminating those biometric identifiers and information – all without providing the requisite notice, obtaining the requisite releases, or satisfying any of BIPA's other provisions that would excuse Defendants from BIPA's mandates – Defendants again violated BIPA.

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 44.

45. In further violation of BIPA, Defendants failed to use a reasonable standard of care to protect Plaintiffs' and Class Members' biometric identifiers and information from disclosure and, in fact, affirmatively disclosed Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 45.

46. In further violation of BIPA, as private entities in possession of Plaintiffs' and Class Members' biometric identifiers and information, Defendants have failed to adopt or make available to the public a retention schedule or guidelines for permanently destroying such biometric identifiers and information once the initial purpose for collecting them has been satisfied.

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 46.

47. In further violation of BIPA, Defendants also sold, leased, traded, and otherwise profited from the biometric identifiers and information of Plaintiffs and Class Members.

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 47.

48. In further violation of BIPA, Defendants also failed and continue to fail to permanently destroy Plaintiffs' and the Class Members' biometric identifiers and information after the initial purpose for collecting or obtaining such identifiers and information has been satisfied and/or within 3 years of Plaintiffs' and Class Members' last interaction with Defendants (which there never was).

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 48.

49.     In sum, whether selling FaceSearch or other products incorporating and utilizing Defendants' biometric technology, Defendants did exactly what BIPA prohibits.

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 49.

50.     Defendants' violations of BIPA were intentional and reckless or, in the alternative, negligent.

**ANSWER:** Defendants deny that they violated BIPA in any way. Defendants deny the remaining allegations of Paragraph 50.

## III.     Plaintiffs' and Class Members' Injuries and Damages

51.     As a result of Defendants' unlawful conduct, Plaintiffs and Class Members have already sustained injuries and face many more imminent and certainly impending injuries, which injuries they will continue to suffer.

**ANSWER:** Defendants deny that they violated BIPA in any way or otherwise acted unlawfully, and deny that Plaintiffs or other members of the putative class have suffered any injuries. Defendants deny the remaining allegations of Paragraph 51.

52.     Defendants' unlawful conduct has resulted in, among other things: (a) Plaintiffs' and Class Members' unique biometric identifiers and information being collected, captured, obtained, disclosed, redisclosed, and otherwise disseminated without the requisite notice having been given and without the requisite releases having been obtained; (b) Plaintiffs and Class Members being deprived of the very control over their biometric identifiers and information that BIPA was designed to protect; and (c) Plaintiffs and the Class Members being left without any understanding or certainty as to when and how their biometric information and identifiers would finally be destroyed.

**ANSWER:** Defendants deny that they violated BIPA in any way or otherwise acted unlawfully, and deny that Plaintiffs or other members of the putative class have suffered any injuries. Defendants deny the remaining allegations of Paragraph 52.

53.     Further, as a result of Defendants' unlawful conduct, Plaintiffs and Class Members do not know which, or how many, individuals or entities have received, obtained, accessed, stored,

disclosed, redisclosed, or otherwise made use of their biometric identifiers and information, exposing them to the imminent and certainly impending injuries of surveillance, reputational harm, stalking, and other privacy harms.

**ANSWER:**    Defendants deny that they violated BIPA in any way or otherwise acted

unlawfully, and deny that Plaintiffs or other members of the putative class have suffered any

injuries. Defendants deny the remaining allegations of Paragraph 53.

54.    Plaintiffs and Class Members have no recourse for the fact that Defendants compromised their unique biometric identifiers and information. Moreover, Plaintiffs and Class Members are at heightened risk for other potential injuries and are likely to withdraw from biometric-facilitated transactions and other facially-mediated electronic participation.

**ANSWER:**    Defendants deny the allegations of Paragraph 54.

## CLASS ACTION ALLEGATIONS

55.    Plaintiffs bring this action on behalf of themselves and similarly situated individuals as a class action under Federal Rule of Civil Procedure 23, seeking damages and equitable relief on behalf of the following Class for which Plaintiff seeks certification: All individuals whose faces appeared in the Biometric Database during the period February 14, 2015 to the present who have been and/or currently are Illinois residents.

**ANSWER:**    Defendants admit that Plaintiffs purport to bring this action on their own

behalf and on behalf of the putative class described in Paragraph 55, but deny that the alleged class

(or any class) can be certified in this action. Defendants deny the remaining allegations of

Paragraph 55.

56.    Excluded from the Class are: (a) Defendants Vigilant and Motorola; (b) any of their parents, affiliates or subsidiaries; (c) any entities in which Defendants have a controlling interest; (d) any of Defendants' officers or directors; or (e) any successors or assigns of Defendants. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

**ANSWER:**    Defendants admit that Plaintiffs purport to exclude the persons or entities

described in Paragraph 56 from the putative class, but deny that the alleged class (or any class) can

be certified in this action. Defendants deny the remaining allegations of Paragraph 56.

57.    Plaintiffs reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

**ANSWER:** Defendants admit that, in Paragraph 57, Plaintiffs purport to reserve the right to amend or modify their putative class definition, but deny that the alleged class (or any class) can be certified in this action. Defendants deny the remaining allegations of Paragraph 57.

58. **Numerosity.** While the exact number of Class members is not known at this time, Defendants collected, captured, obtained, disclosed, redisclosed, otherwise disseminated, sold, leased, traded, profited from, and currently maintain the biometric identifiers and information from at least 18 million images of faces, of which, on information and belief, at least tens of thousands are photographs of Illinois residents. The Class, therefore, likely includes tens of thousands of unique individuals. Consistent with Rule 23(a)(1), the proposed Class is therefore so numerous that joinder of all members is impracticable. Class Members may be identified through objective means, including objective data available to Defendants regarding the images in the Biometric Database and associated names and residency information. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice.

**ANSWER:** Defendants deny that they "collected, captured, obtained, disclosed, redisclosed, otherwise disseminated, sold, leased, traded, profited from, and currently maintain the biometric identifiers and information" of Plaintiffs or any other putative class members. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 58, and therefore deny those allegations.

59. **Commonality and predominance.** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the proposed Class. Common questions include, but are not limited to, the following:

a. Whether Defendants collected, captured, otherwise obtained, and/or currently maintain the biometric identifiers or information of Plaintiffs and Class Members;

b. Whether Defendants possess or possessed the biometric identifiers or information of Plaintiffs and Class Members;

c. Whether Defendants disclosed, redisclosed, or otherwise disseminated the biometric identifiers or information of Plaintiffs and Class Members;

d. Whether Defendants sold, leased, traded, or otherwise profited from the biometric identifiers or information of Plaintiffs and Class Members;

e.      Whether Defendants provided the notice required by BIPA before collecting, capturing, obtaining, disclosing, redisclosing, or otherwise disseminating the biometric identifiers or information of Plaintiffs and Class Members;

f.      Whether Defendants obtained written releases from Plaintiffs and Class Members or their authorized representatives before collecting, capturing, obtaining, disclosing, redisclosing, or otherwise disseminating the biometric identifiers or information or Plaintiffs and Class Members;

g.      Whether Defendants had in place – and disclosed to the public – the written retention and destruction policies required by BIPA while in possession of Plaintiffs' and Class Members' biometric identifiers and information;

h.      Whether Defendants protected Plaintiffs' and Class Members' biometric identifiers and information from disclosure using the reasonable standard of care within the industry and in a manner that was the same as or more protective than the manner in which each of them protects other confidential and sensitive information;

i.      Whether Plaintiffs and Class Members suffered damages as a proximate result of Defendants conduct; and

j.      Whether Plaintiffs and Class Members are entitled to damages, equitable relief and other relief.

**ANSWER:**    Defendants deny the allegations of Paragraph 59.

60.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class they seek to represent because Plaintiffs and all members of the proposed Class have suffered similar injuries as a result of the same practices alleged herein. Plaintiffs have no interests to advance adverse to the interests of the other members of the proposed Class.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to

the allegation in Paragraph 60 that "Plaintiffs have no interests to advance adverse to the interests

of the other members of the proposed Class," and therefore deny those allegations. Defendants

deny the remaining allegations of Paragraph 60.

61.    **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the proposed Class and have retained as their counsel attorneys experienced in class actions and complex litigation.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 61, and therefore deny those allegations.

62.     **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, may not be of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and the court system. A class action, however, presents far fewer management difficulties and provides the benefit of a single adjudication, economy of scale and comprehensive supervision by a single court.

        **ANSWER:**     Defendants deny the allegations of Paragraph 62.

63.     In the alternative, the proposed Class may be certified because:

        a.      The prosecution of separate actions by each individual member of the proposed Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

        b.      The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and

        c.      Defendants acted or refused to act on grounds generally applicable to the proposed Class, thereby making final and injunctive relief appropriate with respect to members of the proposed Class.

        **ANSWER:**     Defendants deny the allegations of Paragraph 63.

64.     Pursuant to Rule 23(c)(4), particular issues are appropriate for certification – namely the issues described above – because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

        **ANSWER:**     Defendants deny the allegations of Paragraph 64.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**(VIOLATION OF BIPA – 740 ILCS § 14/15(a))**

65.     Plaintiffs restate and reallege all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

        **ANSWER:**     Defendants incorporate and restate their responses to all paragraphs of the

First Amended Complaint as though fully set forth herein.

66.     As alleged above, Defendants violated BIPA by failing to develop a written policy that it made available to the public that established a retention schedule and guidelines for permanently destroying biometric identifiers and information.

**ANSWER:**     This claim was dismissed pursuant to the Court's Order dated January 8, 2021 (Dkt. 33), and therefore no response is required.

67.     Defendants' violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:**     This claim was dismissed pursuant to the Court's Order dated January 8, 2021 (Dkt. 33), and therefore no response is required.

68.     As a direct and proximate result of Defendants' violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:**     This claim was dismissed pursuant to the Court's Order dated January 8, 2021 (Dkt. 33), and therefore no response is required.

69.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:**     This claim was dismissed pursuant to the Court's Order dated January 8, 2021 (Dkt. 33), and therefore no response is required.

70.     Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:**     This claim was dismissed pursuant to the Court's Order dated January 8, 2021 (Dkt. 33), and therefore no response is required.

71.     Plaintiff and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:**     This claim was dismissed pursuant to the Court's Order dated January 8, 2021 (Dkt. 33), and therefore no response is required.

**COUNT TWO**
**(VIOLATION OF BIPA – 740 ILCS § 14/15(b))**

72.     Plaintiffs restate and reallege all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

**ANSWER:**     Defendants incorporate and restate their responses to all paragraphs of the First Amended Complaint as though fully set forth herein.

73.     As alleged above, Defendants violated BIPA by collecting, capturing, and otherwise obtaining individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiffs and Class Members, without providing the requisite written information and without obtaining the requisite written releases.

**ANSWER:**     Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 73.

74.     Defendants' violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:**     Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 74.

75.     As a direct and proximate result of Defendants' violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:**     Defendants deny that they violated BIPA in any way, and deny that their alleged actions have caused or will continue to cause any injury to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 75.

76.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:**     Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 76, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 76.

77.     Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by

unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:** Defendants deny that they violated BIPA in any way or otherwise acted wrongfully, and deny that their alleged actions have caused or will continue to cause any injury, much less "great and irreparable" injury, to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 77.

78. Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:** Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 78, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 78.

**COUNT THREE**
**(VIOLATION OF BIPA – 740 ILCS § 14/15(c))**

79. Plaintiffs restate and reallege all paragraphs of this First Amended Class Action Complaint, as though fully set forth herein.

**ANSWER:** Defendants incorporate and restate their responses to all paragraphs of the First Amended Complaint as though fully set forth herein.

80. As alleged above, Defendants violated BIPA by selling, leasing, trading, and unlawfully profiting from individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiffs and Class Members.

**ANSWER:** Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 80.

81. Defendants' violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:** Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 81.

82.     As a direct and proximate result of Defendants' violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:**     Defendants deny that they violated BIPA in any way, and deny that their alleged actions have caused or will continue to cause any injury to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 82.

83.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:**     Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 83, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 83.

84.     Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:**     Defendants deny that they violated BIPA in any way or otherwise acted wrongfully, and deny that their alleged actions have caused or will continue to cause any injury, much less "great and irreparable" injury, to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 84.

85.     Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:**     Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 85, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 85.

## COUNT FOUR
### (VIOLATION OF BIPA – 740 ILCS § 14/15(d))

86.     Plaintiffs restate and reallege all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

**ANSWER:**    Defendants incorporate and restate their responses to all paragraphs of the First Amended Complaint as though fully set forth herein.

87.    As alleged above, Defendants violated BIPA by disclosing, redisclosing, and otherwise disseminating individuals' biometric identifiers and information, including the biometric identifiers and information of Plaintiffs and Class Members, even though: (a) neither the subjects of the biometric identifiers and information nor their authorized representatives consented to the disclosure and redisclosure; (b) the disclosure and redisclosure did not complete a financial transaction requested or authorized by the subjects of the biometric identifiers and information or their authorized representatives; (c) the disclosure and redisclosure was not required by State or federal law or municipal ordinance; and (d) the disclosure and redisclosure was not required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

**ANSWER:**    Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 87.

88.    Defendants' violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:**    Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 88.

89.    As a direct and proximate result of Defendants' violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:**    Defendants deny that they violated BIPA in any way, and deny that their alleged actions have caused or will continue to cause any injury to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 89.

90.    Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:**    Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 90, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 90.

91.    Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their

injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:** Defendants deny that they violated BIPA in any way or otherwise acted wrongfully, and deny that their alleged actions have caused or will continue to cause any injury, much less "great and irreparable" injury, to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 91.

92. Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorneys' fees, costs and expenses relating to this action.

**ANSWER:** Defendants admit that Plaintiffs seek the relief described in Paragraph 92, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 92.

## COUNT FIVE
### (VIOLATION OF BIPA – 740 ILCS § 14/15(e))

93. Plaintiffs restate and reallege all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

**ANSWER:** Defendants incorporate and restate their responses to all paragraphs of the First Amended Complaint as though fully set forth herein.

94. Defendants, while in possession of Plaintiffs' and Class Members' biometric identifiers and information, failed to protect from disclosure all biometric identifiers and information: (a) using the reasonable standard of care within their industry; and (b) in a manner that is the same as or more protective than the manner in which they protect other confidential and sensitive information.

**ANSWER:** Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 94.

95. Defendants' violations of BIPA were intentional and reckless or, pleaded in the alternative, negligent.

**ANSWER:** Defendants deny that they violated BIPA in any way, and deny the remaining allegations of Paragraph 95.

96.     As a direct and proximate result of Defendants' violations of BIPA, Plaintiffs and Class Members have suffered and will continue to suffer injury.

**ANSWER:**     Defendants deny that they violated BIPA in any way, and deny that their alleged actions have caused or will continue to cause any injury to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 96.

97.     Plaintiffs and Class Members seek as monetary relief the greater of $5,000 or actual damages or, pleaded in the alternative, $1,000 or actual damages.

**ANSWER:**     Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 97, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 97.

98.     Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that their biometric identifiers and information can be viewed and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the misuse of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:**     Defendants deny that they violated BIPA in any way or otherwise acted wrongfully, and deny that their alleged actions have caused or will continue to cause any injury, much less "great and irreparable" injury, to Plaintiffs and other putative class members. Defendants deny the remaining allegations of Paragraph 98.

99.     Plaintiffs and Class Members also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**ANSWER:**     Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 99, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 99.

**COUNT SIX**
**(UNJUST ENRICHMENT)**

100.     Plaintiffs restate and reallege all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

28

**ANSWER:**     Defendants incorporate and restate their responses to all paragraphs of the

First Amended Complaint as though fully set forth herein.

101.     Defendants obtained a monetary benefit from Plaintiffs and Class Members to Plaintiffs' and Class Members' detriment. Defendants did so by profiting off of the surreptitious collection of the biometric identifiers and information of Plaintiffs and Class Members, while exposing Plaintiffs and Class Members to a heightened risk of privacy harms and depriving them of their control over their biometric data.

**ANSWER:**     Defendants deny the allegations of Paragraph 101.

102.     Plaintiffs and Class Members did not authorize Defendants to collect, capture, obtain, disclose, redisclose, disseminate, sell, trade, lease, and otherwise profit off of their biometric identifiers and information.

**ANSWER:**     Defendants deny the allegations of Paragraph 102.

103.     Defendants appreciated, accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from Defendants' conduct toward Plaintiffs and Class Members, as described herein.

**ANSWER:**     Defendants deny the allegations of Paragraph 103.

104.     Defendants sold, leased, traded, and otherwise profited from – and caused to be sold, leased, traded, and otherwise profited from – Plaintiffs' and Class Members' biometric identifiers and information and did not provide full compensation for the benefit received from Plaintiffs and Class Members.

**ANSWER:**     Defendants deny the allegations of Paragraph 104.

105.     Defendants acquired and caused to be acquired Plaintiffs' and Class Members' biometric identifiers and information through inequitable means in that they collected, captured, and otherwise obtained biometric identifiers and information from Plaintiffs' and Class Members' booking photographs without permission and in violation of Illinois law.

**ANSWER:**     Defendants deny the allegations of Paragraph 105.

106.     Plaintiffs and Class Members have no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations of Paragraph 106.

107.     Under the circumstances, it would be unjust and unfair for Defendants to be permitted to retain any of the benefits obtained from Plaintiffs and Class Members and their biometric identifiers and information.

**ANSWER:**     Defendants deny the allegations of Paragraph 107.

108.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the biometric identifiers and information belonging to Plaintiffs and Class Members because Defendants unlawfully obtained that information.

**ANSWER:**    Defendants deny the allegations of Paragraph 108.

109.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received as a result of their collection, capture, obtainment, disclosure, redisclosure, dissemination, sale, leasing, trading, and profiting off of Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:**    Defendants deny the allegations of Paragraph 109.

**COUNT SEVEN**
**(INJUNCTIVE RELIEF)**

110.    Plaintiffs restate and reallege all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

**ANSWER:**    Defendants incorporate and restate their responses to all paragraphs of the

First Amended Complaint as though fully set forth herein.

111.    Plaintiffs and Class Members have clear and ascertainable rights in need of protection – namely: (a) the right to have Defendants abide by their obligations under BIPA; (b) the right to control their biometric identifiers and information; and (c) the right to privacy.

**ANSWER:**    Defendants deny the allegations of Paragraph 111.

112.    Plaintiffs and Class Members have no adequate remedy at law because a legal remedy cannot retrieve the biometric identifiers and information that Defendants unlawfully collected, captured, obtained, disclosed, redisclosed, disseminated, sold, leased, traded, and otherwise profited from, and cannot end the invasion of privacy caused by Defendants' conduct.

**ANSWER:**    Defendants deny the allegations of Paragraph 112.

113.    Plaintiffs and Class Members will suffer irreparable harm, as alleged herein, from Defendants if their conduct is not so restrained, requiring injunctive relief.

**ANSWER:**    Defendants deny the allegations of Paragraph 113.

114.    Plaintiffs and Class Members are likely to succeed on the merits because, as alleged herein, Defendants unlawfully collected, captured, obtained, disclosed, redisclosed, disseminated, sold, leased, traded, and otherwise profited from Plaintiffs' and Class Members' biometric identifiers and information despite being prohibited from doing so.

**ANSWER:**    Defendants deny the allegations of Paragraph 114.

115. Plaintiffs and Class Members seek injunctive relief: (a) barring Defendants from any further use of Plaintiffs' and Class Members' biometric identifiers and information; (b) barring Defendants from continuing to collect, capture, obtain, disclose, redisclose, disseminate, or profit from Plaintiffs' and Class Members' biometric identifiers and information; and (c) requiring Defendants to delete and destroy Plaintiffs' and Class Members' biometric identifiers and information.

**ANSWER:** Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 115, but deny that Plaintiffs or the other putative class members are entitled to such relief or any other relief. Defendants deny the remaining allegations of Paragraph 115.

## AFFIRMATIVE DEFENSES

For their affirmative defenses to the claims in Plaintiffs' Amended Complaint, Defendants state as follows:

1. The claims of Plaintiffs and the putative class are barred, in whole or in part, by BIPA's government contractor exemption, 740 ILCS 14/25(d(e).

2. Based on the facts and circumstances of this case, the claims of Plaintiffs and the putative class are barred, in whole or in part, because they purport to require this Court to apply the requirements of BIPA to activity occurring outside Illinois, in violation of the Illinois prohibition on giving statutes extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute. *See, e.g.*, *Avery v. State Farm Mut. Ins. Co.*, 216 Ill.2d 100, 184-85 (2005).

3. Based on the facts and circumstances of this case, the claims of Plaintiffs and the putative class are barred, in whole or in part, because they purport to require this Court to apply the requirements of BIPA to activity occurring outside Illinois, in violation of the dormant Commerce Clause of the United States Constitution.

4.    The claims of Plaintiffs and the putative class are barred, in whole or in part, because they purport to require this Court to abridge Defendants' freedom of speech, in violation of the First Amendment to the United States Constitution.

5.    The claims of Plaintiffs and the putative class for statutory liquidated damages are barred, in whole or in part, because they violate the Due Process Clauses of the United States Constitution and the Illinois Constitution.

6.    The claims of Plaintiffs and the putative class are barred, in whole or in part, because the requirements of BIPA constitute special legislation in violation of the Illinois Constitution.

7.    The claims of Plaintiffs and the putative class are barred, in whole or in part, because BIPA, including but not limited to the statute's "government contractor" exemption and definitions of "biometric identifiers" and "biometric information," are vague in violation of the Illinois Constitution.

8.    The claims of Plaintiffs and the putative class are barred, in whole or in part, because they were not commenced within the time set forth in the applicable statute of limitation.

9.    The claims of Plaintiffs and the putative class are barred, in whole or in part, because Defendants' actions were not the actual or proximate cause of any loss suffered by Plaintiffs and/or members of the putative class.

10.    The claims of Plaintiffs and the putative class are barred, in whole or in part, because all or part of the damages alleged in the Amended Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiffs and/or members of the putative class and/or persons who acted on their behalf), for whose conduct Defendants are not legally responsible, which intervened between the alleged acts

and/or omissions of Defendants and the alleged damages of Plaintiffs and/or members of the putative class.

11.     The claims of Plaintiffs and the putative class are barred, in whole or in part, because all or part of the damages alleged in the Amended Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiffs and/or members of the putative class and/or persons who acted on their behalf), for whose conduct Defendants are not legally responsible. Therefore, if Plaintiffs and/or members of the putative class are found to be entitled to recover any of the alleged damages, Defendants' share thereof must be apportioned or reduced to the extent that such damages are attributable to persons or entities other than Defendants.

12.     The claims of Plaintiffs and the putative class are barred, in whole or in part, because any purported injury is not fairly traceable to the alleged conduct of Defendants, and so the relief sought would not redress any such injury.

13.     The claims of Plaintiffs and the putative class are barred, in whole or in part, because Plaintiffs and other members of the putative class had no reasonable expectation of privacy in booking photographs that were taken and made publicly available by law enforcement agencies and correctional authorities, or in any information derived from such photographs.

14.     The claims of Plaintiffs and the putative class are barred, in whole or in part, by the doctrines of waiver, ratification, estoppel, laches, and unclean hands, and to the extent barred by any applicable law prohibiting this cause of action to the extent the alleged claim is the necessary result of Plaintiffs criminal conduct and or convictions.

15.     The claims of Plaintiffs and the putative class are barred, in whole or in part, by their failure to mitigate any alleged damages.

Defendants fully reserve their rights to amend and/or supplement the foregoing affirmative defenses, including but not limited to as investigation and discovery proceeds.

Respectfully submitted,

MOTOROLA SOLUTIONS, INC. and
VIGILANT SOLUTIONS, LLC

Dated:  February 16, 2021                          By:  */s/ David C. Layden*
                                                                          One of their attorneys

David C. Layden
Andrew W. Vail
Steven Tinetti
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois  60654-3456
Telephone:  (312) 222-9350

## CERTIFICATE OF SERVICE

I, David C. Layden, an attorney, certify that on February 16, 2021, I caused **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ *David C. Layden*