# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHNNY FLORES, ARIEL GOMEZ and DERRICK LEWIS, for themselves and others similarly situated, ) ) ) ) | |
| ) | Case No. 1:20–cv–01128 |
| Plaintiffs, ) ) | |
| ) | Judge Charles R. Norgle, Sr. |
| v. ) ) | |
| MOTOROLA SOLUTIONS, INC. and VIGILANT SOLUTIONS, LLC, ) ) ) | |
| Defendants. ) | |

**DEFENDANTS MOTOROLA SOLUTIONS, INC.'S
AND VIGILANT SOLUTIONS, LLC'S MEMORANDUM OF LAW IN
<u>SUPPORT OF MOTION TO COMPEL WRITTEN DISCOVERY FROM PLAINTIFFS</u>**

The three named Plaintiffs in this case seek statutory and actual damages (including "reputational harm") from Defendants under the Illinois Biometric Information Privacy Act ("BIPA") and under their claims for unjust enrichment. Their allegations are based, in part, on the fact that they were arrested and incarcerated by Illinois law enforcement agencies, and that in connection with their criminal prosecutions, their photographs—commonly referred to as "mugshots"—were taken by law enforcement and made public records pursuant to Illinois law. For example, the Illinois Criminal Identification Act requires the Illinois State Police to "procure and file for record" information about arrestees, including their photographs, 20 ILCS 2630/2, the Illinois State Records Act requires arrestee information, including their photographs, to "be made available to the news media," 5 ILCS 160/4a(a)(1), and the Illinois Freedom of Information Act requires photographs of arrestees to be "furnished [to the public] as soon as practical." 5 ILCS 140/2.15(a).

Defendants obtain those public image-records and place them into a secure database. They license technology—FaceSearch—to government law enforcement agencies. FaceSearch compares the database images against images that a registered account user at the law enforcement agency uploads to analyze. FaceSearch then may provide a list and mugshots of potential matches from the database.

These three Plaintiffs all assert they were wrongfully convicted previously and at least two have retained the law firm Loevy & Loevy to represent them in separate civil rights cases. In this case, they, with Loevy & Loevy as counsel, seek to represent a class of individuals who also had their mugshots taken by Illinois agencies. The proposed class includes all current IDOC inmates, although not all of the class would claim to have been wrongfully convicted or seek damages relating to reputational harm, like these three Plaintiffs.

Notwithstanding their allegations and requests for equitable relief and monetary damages, Plaintiffs boldly refuse to comply with their discovery obligations. The discovery sought by Defendants through this motion falls into three general subject matters:

- Facts relevant to material allegations that Plaintiffs made in their complaint to assert their BIPA and unjust enrichment claims and alleged damages;

- Facts relevant to the factors this Court must consider to determine whether these three Plaintiffs are adequate class representatives and Loevy & Loevy's adequacy as class counsel; and

- Facts relevant to Defendants' defenses.

As an initial matter, Plaintiffs' counsel has taken the position that Plaintiffs have *no obligation to identify or produce any ESI*. They refuse to disclose any potential sources of ESI or explain whether any steps were taken to identify relevant ESI. In 2021, refusing to produce any electronic information (emails, texts, electronic messages or posts, PDF, word, or other computer files) impermissibly cuts off considerable, if not all, responsive information from these Plaintiffs.

As to the categories of discovery, Plaintiffs' responses are really nothing but baseless objections or attempts to delay. And despite that federal courts repeatedly instruct parties not to assert boilerplate objections, Plaintiffs pay no mind. They assert objections such as "burden" without any explanation of the purported burden involved. They assert vagueness objections to terms like "contact," "image," or "identify,"—despite using these terms themselves. And they object at times that a request "assumes facts not in evidence."

When given an opportunity during the meet and confer process to explain the burden involved in responding to some of the requests to allow Defendants to evaluate their requests, Plaintiffs said that disclosing the burden involved and their investigation into the burden is work product, and that they need not provide any explanation of burden because the material sought, in their unilateral view, is not relevant. They've refused to support with legal authority, revise, or withdraw any of their boilerplate objections.

At bottom, Plaintiffs are unwilling to put any effort into providing substantive responses. If Plaintiffs seek to avoid discovery relevant to the allegations and claims they have made in this case, they must withdraw the relevant allegation or claim, or ultimately have this Court dismiss this case based on Plaintiffs' failure to comply with discovery and the Federal Rules. Defendants respectfully request that this Court order Plaintiffs to produce ESI, produce documents responsive

to Requests for Production Nos. 9, 11, 14, 15, 23, 24, answer and provide supplemental responses to Interrogatory Nos.[1] 1-4, 6-8, 10, 17, 20-22, and admit or deny Flores, Gomez, and Lewis Requests for Admission Nos. 7-9, Flores and Lewis Requests for Admission No. 11, and Gomez Request for Admission No. 12.

## RELEVANT BACKGROUND

Plaintiffs allege, on their own behalf and on behalf of the putative class, that by developing and providing FaceSearch to law enforcement agencies, Defendants violated BIPA and unjustly enriched themselves. Plaintiffs seek the greater of statutory liquidated damages or actual damages for each alleged violation of BIPA, (Dkt. 6, Am. Compl. ¶¶ 69, 76, 83, 90, 97), and "disgorge[ment] into a common fund or constructive trust . . . [of] proceeds that [Defendants] unjustly received" from providing FaceSearch to law enforcement agencies. (*Id.* ¶ 109.) Further, Plaintiffs have made central to their case that Defendants' actions caused additional damages to them because they assert that each of them were wrongfully convicted in at least one instance and have suffered *reputational harm* due to Defendants' use and potential dissemination of their mugshot. Accordingly, Defendants are entitled to explore these matters Plaintiffs put at issue.

On May 24, 2021, Defendants issued document requests and interrogatories to Plaintiffs seeking facts relevant to Plaintiffs' allegations and claims, class certification, and Defendants' defenses. (Ex. A, Bradford Decl. at Ex. 1-4.) On June 22, 2021, Defendants issued Requests for Admission to narrow the issues in dispute in the case. (*Id.* at Ex. 5-7.)

After obtaining an agreed-upon four week extension, Plaintiffs served their responses to Defendant's discovery on July 22, 2021. (Ex. A at Ex. 9-13.) As referenced above, Plaintiffs made numerous boilerplate objections to virtually all of the discovery sought. Where Plaintiffs provided answers, the answers were incomplete and evasive. For example:

---

[1] Defendants issued separate interrogatories to each Plaintiff. Plaintiffs responded to the interrogatories in one document using the numbering from the Flores Interrogatories. To avoid confusion, references to interrogatories in this Motion correspond to the numbering used in the Flores Interrogatories.

3

- Plaintiffs refused to provide information related to their alleged actual damages and instead stated BIPA's statutory damages provisions and asserted the request sought privileged information and was premature (*id.* at Ex. 9, Resp. to Interrog. 20);

- Plaintiffs refused to provide other names[2] they have used and mugshots in their possession, which would enable Defendants to determine if they even have copies of Plaintiffs' mugshots (*id.* at Ex. 9, Resp. to Interrog. 21);

- Plaintiffs refused to provide information concerning their prior arrests, asserting the request was made for harassment and was not relevant (*id.* at Ex. 9, Resp. to Interrog. 10);

- Plaintiffs were asked to identify class actions in which they served or sought to serve as class representative, to which they either acknowledged involvement but provided no other details or stated they did not "believe" they had been involved in any (*id.* at Ex. 9, Resp. to Interrog. 1);

- Plaintiffs were asked to provide details about their relationship with their counsel; Plaintiffs Lewis and Gomez acknowledged they retained Loevy & Loevy in other cases but did not identify those cases or anything else about their relationship (*id.* at Ex. 9, Resp. to Interrog. 4);

- Plaintiffs refused to identify when they came to believe their mugshots existed in the Gallery and the basis for that belief, simply stating they came to believe their mugshots existed in the Gallery "prior to filing the lawsuit." (*Id.* at Ex. 9, Resp. to Interrog. 17.)

In an effort to avoid dispute over the numerous issues presented by Plaintiffs' responses, Defendants sent a letter on August 9, 2021 providing detailed explanations for why Plaintiffs' objections were inadequate and seeking to meet and confer on August 13. (*Id.* at Ex. 14.) Plaintiffs complained about the length of the letter—despite that its length was directly tied to the number of deficiencies in their discovery that needed to be addressed—and professed to need until August 24 to respond. Plaintiffs' counsel had a conflict that precluded the Parties from discussing all of the deficiencies on the 24th, so the several hour conference resumed and concluded on August 31. (Ex. A ¶ 3.)

---

[2] Plaintiffs did provide a second name for Gomez, who was incarcerated under a different name. Plaintiffs' counsel's disclosure of this fact demonstrates the appropriateness and need for the other names that Plaintiffs have used. It also makes Plaintiffs' counsel's position in staunchly refusing to provide those other names even more perplexing.

4

During the August 31 conference, Defendants requested that Plaintiffs' counsel provide supplemental responses and information to many of Defendants' discovery requests and their position on others no later than September 3 given the length of time Plaintiffs had to address such issues. (*Id.* ¶ 23.) Plaintiffs insisted on waiting until September 8.

On September 8, Plaintiffs sent a letter refusing to supplement or provide much of the requested discovery and ignoring many of the issues raised, including items Defendants had believed were resolved during their meet and confer sessions but Plaintiffs then walked back in their September 8 letter. (*Id.* ¶ 25; *id.* at Ex. 17.)

Plaintiffs believe that they can claim—without providing any explanation—that Defendants' discovery is not proportional and unduly burdensome *if they unilaterally decide* that the material sought is not relevant. Plaintiffs' position is that because they disagree with the merits of Defendants' defenses and whether such evidence would be admissible, Plaintiffs are entitled to withhold facts related to those defenses. Plaintiffs have refused to answer basic questions such as "do these documents even exist so that we can avoid fighting about things that do not exist?" Plaintiffs contend that investigating the existence of responsive discovery is unduly burdensome. In accordance with Local Rule 37.2, Defendants have met and conferred with Plaintiffs in an attempt to resolve the discovery disputes and, despite their best efforts, could not reach a resolution. (*Id.* ¶ 3.) Accordingly, Defendants bring this motion and seek relief from this Court.[3]

## ARGUMENT

### I. PLAINTIFFS SHOULD BE ORDERED TO STOP WITHHOLDING RELEVANT FACTS AND DOCUMENTS.

#### A. Legal Standard

Under Federal Rule of Civil Procedure 26, parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

---

[3] Defendants have received inadequate responses from Plaintiffs on a number of other discovery issues on which the parties have met and conferred that are not the subject of this motion. Defendants do not move now on these requests because they believe that, especially if this motion is granted, they may be able obtain this information and do not wish to burden the Court. Should that turn out not to be the case, Defendants reserve the right to seek it.

5

to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance under Rule 26 is broad. *Kelley v. Board of Educ. of City of Chi.*, No. 10 C 7875, 2012 WL 1108135, at *1 (N.D. Ill. Apr. 2, 2012) ("As expansive as the definition of relevance is under Rule 401 of the Federal Rules of Evidence, the standard under the discovery provisions of the Federal Rules of Civil Procedure is even broader.") (citations omitted); *In re Aircrash Disaster*, 172 F.R.D. 295, 303 (N.D. Ill. 1997) (noting that discovery should be allowed "if there is any possibility that the information sought may be relevant to the subject matter of the action"). Plaintiffs, as the party resisting discovery, bear the burden of demonstrating why the discovery request is improper. *See United Auto Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010). And Plaintiffs must do more than offer boilerplate objections with a "reflexive invocation" of the "often abused litany" that the discovery is vague, ambiguous, overly broad, unduly burdensome, and not relevant. *See id.* (quotations omitted). As set forth below, Plaintiffs cannot meet their burden.

    **B.**  **The Court Should Order Plaintiffs To Identify, Search, And Produce ESI.**

The agreed ESI Order requires both Parties to disclose potential sources of ESI, including custodians and third parties with relevant ESI, and proposed search terms for their ESI. (Dkt. 43, Agreed ESI Order at 2, 3); *see also* Fed. R. Civ. P. 26(a)(1)(ii). Despite agreeing to the ESI Order, Plaintiffs objected to disclosing *any* information about ESI in the possession or control of Plaintiffs, and have not disclosed any of the required information regarding such ESI or search terms. Instead, they have told Defendants that even identifying the potential sources of information is unduly burdensome. They refuse to even identify themselves as custodians.

Providing basic information is required by the rules. *See* Fed. R. Civ. P. 26(b)(2)(B); *A & R Body Specialty v. Progressive Cas. Ins. Co.*, No. 3:07CV929 (WWE), 2012 WL 40465, at *2 (D. Conn. Jan 9, 2012) (granting defendant's request for ESI from named class plaintiffs). Defendants are entitled to have Plaintiffs search their emails, text messages, and other electronic media for responsive discovery.

During the meet and confer process, Defendants sought to learn the steps Plaintiffs had taken to identify messages or other communications that would be responsive to Defendants'

discovery requests. (Ex. A ¶¶ 12, 15.) Plaintiffs' counsel refused to discuss whether Plaintiffs had even been asked about the existence of ESI, and took the position that they need not do so because, in their view, there is no relevant ESI and it is too burdensome to ask their clients.[4] (*Id.* ¶ 12.) Plaintiffs provide no legal authority for their position because none exists.

Accordingly, Defendants request that this Court order Plaintiffs to comply with the requirements of Rule 26 and this Court's ESI Order by: (1) identifying all sources of electronically stored information in Plaintiffs' possession, custody, or control that may contain responsive discovery, and (2) propounding a proposed set of custodians and search terms to Defendants.

### C. The Court Should Order Plaintiffs To Produce Discoverable Information.

Plaintiffs' position refusing to produce relevant facts is contrary to the law. First, it is black letter law that matters put at issue by Plaintiffs are appropriate subjects for discovery. *Browner v. Amer. Eagle Bank*, No. 18 CV 1494, 2019 WL 10378333, at *2 (N.D. Ill. Nov. 22, 2019) (holding allegations in the complaint "open[ed] the door to discovery" related to the allegations); *Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2015 WL 13427766, at *3 (N.D. Ill. Feb. 24, 2015) (finding that Defendants opened the door to discovery based on denials of Plaintiffs' allegations).

Second, as an independent matter, Defendants' discovery seeks information that is relevant to Plaintiffs' qualifications to serve as class representatives.

Third, Defendants are entitled to evidence that could be used to impeach the class representatives under Federal Rule of Evidence 609. *See* Fed. R. Evid. 609(a)(1); (a)(2) and (c).

Fourth, Defendants have pleaded affirmative defenses that Plaintiffs' claims—including notably their equitable claims for unjust enrichment and equitable relief—are barred by the doctrine of unclean hands and to the extent their claims are the result of Plaintiffs' own criminal conduct. (Dkt. 37, Answer to Am. Compl. Affirmative Defense ¶ 14.) Defendants' affirmative

---

[4] At the same time, Plaintiffs' counsel was causing delay to Defendants' ability to move forward on its own ESI by insisting Defendants test and include unworkable and unreasonable search terms or phrases. After considerable time spent negotiating and testing terms, Defendants have moved forward, using many terms provided by Plaintiffs, so that they may complete their ESI production. Defendants have complied with and fully responded to all other discovery in the case.

defenses also include that Plaintiffs' claims are barred because they had no reasonable expectation of privacy in publicly available booking photographs or the information they contain. (*Id.* ¶ 13.)

### 1. Plaintiffs Must Produce Facts Relevant To Their Allegations And Damages.

Defendants issued various discovery requests seeking to identify facts relevant to Plaintiffs' allegations and damages. For example, Plaintiffs have alleged:

- Plaintiffs are entitled to damages because Defendants "collected . . . and profited from" their mugshots (*see* Dkt. 6, Am. Compl. ¶¶ 4, 69, 76, 83, 90);

- The named Plaintiffs are actually innocent of the charges upon which they were convicted (*id.* ¶¶ 14-16);

- Plaintiffs' are entitled to actual damages, including "reputational harm" and "privacy harms," and that Defendants were unjustly enriched (*id.* ¶¶ 13, 53, 69, 76, 83, 90, 97, 107-09);

- Plaintiffs are entitled to injunctive relief. (*Id.* ¶¶ 110-15.)

To explore the basis for Plaintiffs' factual allegations and damages, Defendants issued focused discovery:

- Identify any actual damages that You assert You suffered as a result of Defendants' alleged actions, and quantify (or provide an estimate of) the monetary amount of such actual damages. (Ex. A at Ex. 1, Interrog. 20.)[5]

- All documents relating to Plaintiffs' allegation that Defendants' conduct has caused Plaintiffs actual injury or will cause Plaintiffs "imminent" and "impending" injury [relating to Plaintiffs' alleged entitlement to injunctive relief], as alleged in Paragraphs 35 and 51 of the First Amended Complaint. (*Id.* at Ex. 4, Req. for Produc. 23.)

---

[5] These discovery requests should have been unnecessary. Like ESI, this information should have been included in Plaintiffs' initial disclosures under Rule 26, which require "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents and other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of the injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). In Plaintiffs' Rule 26 disclosures, they simply stated the statutory damages provided by BIPA or "actual damages" without any computation for how those actual damages would be calculated, any evidentiary support for actual damages, or any materials bearing on the nature and extent of the injuries suffered.

- All documents that support Your claims for actual damages in this case. (*Id.* at Ex. 4, Req. for Produc. 24.)

- Admit that You are not aware of any circumstance in which Your image has been identified from the FaceSearch database by anyone. (*Id.* at Ex. 5-7, Req. for Admis. 7.)

- Admit that You never complained in writing to anyone regarding your alleged concern that your biometric information had been captured prior to this Litigation. (*Id.* at Ex. 5-7, Req. for Admis. 8.)

- Admit that You never contacted any Defendant about your Mugshot prior to this Litigation. (*Id.* at Ex. 5-7, Req. for Admis. 9.)

- Admit that You never contacted the Chicago Police Department about Your Mugshots prior to this Litigation. (*Id.* at Ex. 5, 7, Req. for Admis. 11; Ex. 6, Req. for Admis. 12.)

- Identify the factual basis for the allegation in Paragraph 8 of the Amended Complaint that "[f]or a fee, Defendants offered, and continue to offer, law enforcement agencies and others throughout the country the opportunity to access and use their Biometric Database as a 'facial search engine'" allowing the identification of persons in the database."[6] (*Id.* at Ex. 1, Interrog. 11.)

- Identify the factual basis for the allegation in Paragraph 8 of the Amended Complaint that "Defendants also incorporated, and continue to incorporate, the Biometric Database into their other facial recognition products, thereby allowing the real and near-real time identification and tracking of millions of people— including Plaintiff and Class Members—wherever they may go." (*Id.* at Ex. 1, Interrog. 12.)

- And several other interrogatories seeking similar factual support for specific allegations made by Plaintiffs in their Complaint. (*Id.* at Ex. 1, Interrog. 13-16.)

In response to the damages discovery, Plaintiffs recited case law supporting the statutory damages provided by BIPA and the harms they are intended to address without providing any of the details regarding their "actual damages." (*Id.* at Ex. 9, Resp. to Interrog. 20; Ex. 10, Resp. to Req. for Produc. 23-24.) If Plaintiffs are going to suffer imminent and impending injuries or

---

[6] As the Court is well-aware, Plaintiffs' resisted Defendants' Rule 12(b)(6) motion to dismiss under the government contractor exemption of BIPA, (740 ILCS 14/25(e)), by arguing that they had pleaded that Defendants sold FaceSearch to private entities, and based on this allegation Plaintiffs were successful. (Dkt. 33, Order on Mot. to Dismiss at 3-4.) Defendants denied that they have sold FaceSearch to private entities. The allegation is false. Defendants have since provided verified discovery responses to Plaintiffs proving the allegation is false. If Plaintiffs have no basis for the allegation, they need to say so and withdraw it.

suffered reputational damages, lost wages or job opportunities, or other actual damages, Defendants are entitled to facts relevant to Plaintiffs' contentions. The same is true for their claims of unjust enrichment, otherwise those claims should be dismissed.

Plaintiffs further stated they did not have sufficient information to admit or deny the Requests for Admission referenced above. (*Id.* at Ex. 11-13, Resp. to Req. for Admis. 7.) But these requests seek basic admissions within the scope of the Plaintiffs' personal knowledge.

As to the interrogatories, Plaintiffs responded that "they will produce documents in their possession, custody, or control responsive to" these interrogatories. They have not done so. And Rule 33 only allows a party to produce business records "if the burden of deriving or ascertaining the answer will be substantially the same for either party[.]" Fed. R. Civ. P. 33(d). Further, the responding party must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]" Fed. R. Civ. P. 33(d)(1). Plaintiffs have yet to produce or identify a single document responsive to the interrogatories.

Defendants are entitled to what facts, if any, Plaintiffs relied upon or currently rely upon to make the allegations and claims they have made in this case. Accordingly, this Court should order Plaintiffs to supplement their Rule 26 disclosures and to provide information responsive to Request for Production Nos. 23 and 24 and Interrogatory Nos. 11-16 and 20, Flores, Lewis, and Gomez Requests for Admission Nos. 7-9, Flores and Lewis Requests for Admission No. 11, and Gomez Request for Admission No. 12.

### 2. Plaintiffs Must Produce Information Concerning Their Prior Legal Proceedings.

Defendants issued several discovery requests seeking information related to civil and criminal proceedings in which they have been involved. Specifically, Defendants issued discovery seeking to identify[7]:

---

[7] Plaintiffs agreed to supplement some of their responses to their requests, like information related to communications discussed in Section C.4. (Ex. A. ¶ 19.) But Plaintiffs did not commit to supplementing their answers unless they determined the information sought was relevant, (*id.* ¶ 25), and have not done so.

- Other class actions where Plaintiffs had served or sought to serve as a class representative (Ex. A at Ex. 1, Interrog. 1);

- Lawsuits or arbitrations in which Plaintiffs were a party, including criminal actions (*id.* at Ex. 1, Interrog. 2);

- Information concerning Plaintiffs' prior arrests (*id.* at Ex. 1, Interrog. 10);

- Documents relating to Plaintiffs' criminal convictions and court proceedings, (*id.* at Ex. 4, Req. for Produc. 14), and prior testimony (*id.* at Ex. 4, Req. for Produc. 15);

- Sworn testimony Plaintiffs had previously provided. (*Id.* at Ex. 1, Interrog. 3.)

Plaintiffs' position is that Defendants are not entitled to any discovery whatsoever into Plaintiffs' prior legal proceedings. They are wrong. This information is discoverable for all four reasons identified below.

First, these issues directly bear on Plaintiffs' allegations that Plaintiffs' themselves have put at issue in the Complaint. For example, Plaintiffs plead that they were all arrested and convicted of various criminal charges and that they are actually innocent. (Dkt. 6, Am. Compl. ¶¶ 14-16.) They further plead that they are in various stages of obtaining post-conviction relief. (*Id.*) They also allege that some of their records are in the FaceSearch Image Gallery, despite certain convictions having been expunged. (*Id.* ¶¶ 4, 14.) Plaintiffs allege that these facts, when coupled with Defendants' alleged conduct, caused them actual damages and injuries, including *reputational harm*. (*Id.* ¶¶ 12, 53.)

Plaintiffs also allege that they suffered reputational harm and seek actual damages based upon their mugshots being made available to law enforcement through the FaceSearch database. (*See, e.g.*, *id.* ¶¶ 53, 69.) Defendants therefore are entitled to seek discovery related to the Plaintiffs' reputations, which includes their prior legal proceedings, to test and defend against those allegations and damages claims. Defendants similarly are entitled to seek discovery on Plaintiffs' attempts—or lack thereof—to mitigate damages.

Second, Plaintiffs' prior legal proceedings may show, among other things, dishonesty, and be a basis to disqualify class representatives. *Marquita Sanders v. W & W Wholesale Inc.*, No. 11

11

C 3557, 2012 WL 3987629, at *5 (N.D. Ill. Sept. 11, 2012) (explaining that criminal convictions can "show dishonesty and can be a basis to bar an individual from acting as a class representative" and finding one of the proposed class representatives inadequate on these grounds). Moreover, these three Plaintiffs' alleged reputational issues also go to the heart of class certification. To the extent Defendants' actions did cause any reputational harm, such harm would seem to be different for an actually innocent individual versus a convicted serial murderer sentenced to life in IDOC. *See Harris v. comScore, Inc.*, No. 11 CV 5807, 2012 WL 686709, at *5 (N.D. Ill. Mar. 2, 2012) ("This court agrees that whether the members of the proposed classes suffered similar damages is relevant to the issue of commonality[.]"); *see also Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 600 (N.D. Ill. 2009) (determining a proposed class representative was inadequate because he was subject to a "non-frivolous and unique" defense different from the class).

Third, prior legal proceedings may reveal impeachment evidence under Federal Rule of Evidence 609. *See* Fed. R. Evid. 609(a)(1); (a)(2) and (c).

Fourth, Plaintiffs insist that Defendants' affirmative defenses are unavailable but have provided no authority supporting that position, despite Defendants requesting such authority during the meet and confer process. Defendants adequately pleaded affirmative defenses that remain in this case, and they are entitled to discovery related to those defenses, particularly where Plaintiffs have put those facts at issue in their own allegations.

Accordingly, Defendants request that this Court order Plaintiffs to produce information in response to Request for Production Nos. 14 and 15 and Interrogatory Nos. 1-3, 10, and 17.

### 3. Plaintiffs Must Produce Information Allowing Defendants To Test The Claims That Their Images Are In Defendants' FaceSearch Gallery.

Defendants sought information to learn if Plaintiffs' mugshots were in the FaceSearch Image Gallery. Defendants issued interrogatories to Plaintiffs seeking other names used by Plaintiffs. (Ex. A at Ex. 1, Interrog. 21.) Defendants also requested that Plaintiffs provide copies of their mugshots if they have them. (*Id.* at Ex. 4, Req. for Produc. 11.) The importance of this

information is plain: should Plaintiffs' images not exist in Defendants' gallery, they would have no connection to this case.

Accordingly, Plaintiffs must provide any other names and produce copies of mugshots in their possession in response to Request for Production No. 11 and Interrogatory No. 21.

### 4. Plaintiffs Must Identify Communications With Other Potential Class Members And Non-Parties About This Case.

Defendants asked Plaintiffs to identify individuals with whom Plaintiffs communicated relating to Defendants or this lawsuit. (Ex. A. at Ex. 1, Interrog. 8.) Plaintiff Flores acknowledged he had communicated with others about the litigation but provided no details about those communications, while Plaintiffs Lewis and Gomez stated they did "not believe" they had non-privileged discussions regarding this litigation. (*Id.* at Ex. 9, Resp. to Interrog. 8.)

Defendants understood that Plaintiffs had agreed to supplement their responses during the meet and confer. Plaintiffs' September 8, 2021 letter walked back that commitment, and Plaintiffs stated they would supplement this response "subject to their objections and to [sic] there is additional discoverable information." (*Id.* ¶¶ 19, 25; *id.* at Ex. 17, 3.) Plaintiffs have taken the position that this is not relevant and have not committed to supplementing their response.

Accordingly, this Court should order Plaintiffs to produce information concerning their communications about this case that is responsive to Interrogatory No. 8.

### 5. Plaintiffs Must Produce Information Concerning The Relationship Between Plaintiffs And Their Counsel Relevant To Class Certification.

Defendants issued discovery seeking copies of engagement letters, (Ex. A at Ex. 4, Req. for Produc. 9), and interrogatories to learn facts about the relationship between Plaintiffs and the Loevy & Loevy law firm. (*Id.* at Ex. 1, Interrog. 4, 6-7.)

Courts in this Circuit and others regularly examine fee agreements when evaluating the adequacy of class representatives and their counsel. *Dixon v. Jefferson Capital Systems, LLC*, No. 1:19-cv-02457-JMS-DML, 2020 WL 9607902, at *2-3 (S.D. Ind. Nov. 23, 2020) (ordering production of fee agreements to assess adequacy of class counsel); *In re Ocean Bank*, No. 06 C

13

3515, 2007 WL 1063042, at *6-7 (N.D. Ill. Apr. 9, 2007) (discussing contents of retainer agreement at length to determine if the proposed named plaintiff was adequate).[8] For example, an agreement by a class representative not to oppose a fee request by class counsel would be an obvious abdication of the class representative's duty to the class.

Plaintiffs first objected arguing their retainer agreements were privileged. (Ex. A at Ex. 10, Resp. to Req. for Produc. 9.) When Defendants provided authority to Plaintiffs refuting this position and making clear during the meet and confer that Defendants do not seek protectable information that could be redacted, Plaintiffs still refused[9] to produce the documents and suggested that Defendants could depose the Plaintiffs concerning the retainer agreements without copies. (*Id.* ¶ 21.) But that approach makes little logical sense where plaintiffs may profess not recalling details of their engagements with their counsel,[10] which would require further motion practice to produce the engagement letters to refresh recollection and then subsequently re-depose the Plaintiffs on these topics.

Defendants seek additional discovery about the relationship between the Plaintiffs and their counsel that is also relevant to assessing whether Plaintiffs are adequate class representatives. For example, Plaintiffs Lewis and Gomez "have retained Loevy & Loevy to represent their interests in other cases," (*id.* at Ex. 9, Resp. to Interrog. 4), but Plaintiffs do not provide any details concerning those cases—not even a case caption. And Plaintiffs' responses improperly limit the Interrogatory to Loevy & Loevy's legal representation. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) (reversing class certification where class representative had

---

[8] *See also Gusman v. Comcast Corp.*, 298 F.R.D. 592, 600 (S.D. Cal. 2014) ("[T]he Court concludes Plaintiff's retainer and fee agreement with counsel in this case is relevant to the Rule 23(a)(4) analysis of whether Plaintiff is an adequate representative of the class.").

[9] The only authority that Plaintiffs provided to support their positon was an unreported case from the District Court of New Jersey, which in turn cited no case law for its conclusion that retainer agreements were not relevant. *See In re: Front Loading Washing Mach. Class Action Litig.*, No. 08-51 (FSH)(MAS), 2010 WL 3025141, at *4 (D.N.J. July 29, 2010). And the authority provided by Plaintiffs suggests that details about engagements could be obtained through depositions. *See id.*

[10] To extent there is privileged information in the retainer agreements, Defendants do not object to the Plaintiffs applying redactions. But Defendants should be able to see the dates of the engagement, the financial commitments, and any other non-privileged information contained in the retainer agreements.

"significant personal and financial ties" to class counsel); *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 581 (N.D. Ill. 2014) (finding adequacy of representation not satisfied where class representative had personal and family ties to class counsel).

This Court should order Plaintiffs to produce engagement agreements in response to Request for Production No. 9 and to supplement their answers to Interrogatory Nos. 4, 6, and 7.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court order Plaintiffs to identify sources of ESI, search ESI, and produce documents responsive to discovery from ESI consistent with Rule 26, produce documents responsive to Request for Production Nos. 9, 11, 14, 15, 23, 24, answer and supplement their responses to Interrogatory Nos. 1-4, 6-8, 10, 17, 20-22, and admit or deny Flores, Lewis, and Gomez Requests for Admission Nos. 7-9, Flores and Lewis Requests for Admission No. 11, and Gomez Requests for Admission No. 12. Defendants further request that, pursuant to Rule 37(a)(5)(A), the Court award it their reasonable attorneys' fees and costs incurred in connection with this motion.

Dated: September 14, 2021            Respectfully submitted,

                                                       DEFENDANTS MOTOROLA SOLUTIONS, INC.
                                                       AND VIGILANT SOLUTIONS, LLC

                                                       By: _/s/ Andrew W. Vail_
                                                       One of Their Attorneys

David C. Layden
dlayden@jenner.com
Andrew W. Vail
avail@jenner.com
Jason M. Bradford
jbradford@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654

## CERTIFICATE OF SERVICE

  I, Andrew W. Vail, an attorney, hereby certify that, on September 14, 2021, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

                 By: */s/ Andrew W. Vail*
                 One of Their Attorneys