# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNY FLORES, ARIEL GOMEZ and DERRICK LEWIS, for themselves and others similarly situated, | ) ) ) | |
| | ) | Case No. 1:20–cv–01128 |
| Plaintiffs, | ) | |
| | ) | Judge Charles R. Norgle, Sr. |
| v. | ) | |
| | ) | |
| MOTOROLA SOLUTIONS, INC. and VIGILANT SOLUTIONS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF JASON M. BRADFORD IN SUPPORT OF DEFENDANTS
MOTOROLA SOLUTIONS, INC.'S AND VIGILANT SOLUTIONS, LLC'S
MOTION TO COMPEL WRITTEN DISCOVERY FROM PLAINTIFFS**

Pursuant to Local Rule 37.2, the undersigned counsel for Defendants Motorola Solutions, Inc. ("Motorola") and Vigilant Solutions LLC ("Vigilant," and together with Motorola, "Defendants") submits the following Declaration in Support of Defendants' Motion to Compel Written Discovery Responses from Plaintiffs.

I, Jason M. Bradford, hereby declare as follows:

1. I am a partner in the law firm of Jenner & Block LLP and one of the lawyers responsible for representing Defendants in the above-captioned litigation. I have personal knowledge of the facts stated in this declaration and, if called upon to do so, would testify to those facts.

2. I make this declaration in support of Defendants' Motion to Compel Written Discovery from Plaintiffs.

3. The parties met and conferred regarding the issues raised in the concurrently-filed motion on August 24, 2021 at 4:30 p.m. and 31, 2021 at 2:00 p.m. via Zoom teleconference. Each

1

conference lasted approximately two hours. The following attorneys participated on behalf of Plaintiffs: Scott Drury and Andrew Miller. The following attorneys participated on behalf of Defendants: David Layden, Andrew Vail, and Jason Bradford. Defendants made a good faith effort to resolve the disputes briefed in the motion but, despite their best efforts, were unable to do so.

### Defendants' Written Discovery

4.      Defendants' first set of Interrogatories to Plaintiffs were served on May 24, 2021. Attached hereto as **Exhibits 1-3** are true and correct copies of Defendants' first sets of Interrogatories. Among other things, Defendants' interrogatories sought information related to Plaintiffs' background, prior legal proceedings, Plaintiffs' adequacy as class representatives and the adequacy of Loevy & Loevy to serve as class counsel, Plaintiffs' allegations, including their alleged damages, and Defendants' defenses.

5.      Defendants' first set of Requests for Production to Plaintiffs were also served on May 24. Attached hereto as **Exhibit 4** is a true and correct copy of Defendants' first set of Requests for Production. Defendants' first set of Requests for Production sought the same kinds of information sought in Defendants' first set of Interrogatories.

6.      In an effort to narrow the issues in dispute in this case and avoid the need for discovery on matters that would otherwise be uncontested, Defendants served Plaintiffs with Defendants' first set of Requests for Admission on June 22. Attached hereto as **Exhibits 5-7** are true and correct copies of Defendants' first set of Requests for Admission.

7.      Defendants agreed to a three week extension for Plaintiffs to respond to Defendants' written discovery. Attached hereto as **Exhibit 8** is a true and correct copy of correspondence agreeing to that extension.

8.      Plaintiffs provided their responses to Defendants' written discovery on July 22. Attached hereto as **Exhibits 9-13** are true and correct copies of Plaintiffs' responses to Defendants' discovery.

## **Defendants' Attempts to Resolve the Discovery Disputes with Plaintiffs**

9.      On August 9, Defendants' counsel sent Plaintiffs' counsel a letter detailing the various deficiencies in Plaintiffs' responses and proposed that the parties meet and confer to discuss the deficiencies and resolve the discovery disputes. Attached hereto as **Exhibit 14** is a true and accurate copy of Defendants' August 9 letter.

10.      On August 19, Defendants sent a follow-up email to Plaintiffs again highlighting deficiencies in Plaintiffs' discovery responses and requesting a response to Defendants' August 9 letter. Later that day, Defendants again emailed Plaintiffs concerning their deficient ESI disclosures. Attached hereto as **Exhibit 15** is a true and accurate copy of this email correspondence. Attached hereto as **Exhibit 16** is a true and accurate copy of Plaintiffs' ESI disclosures. In their correspondence, Defendants explained that Plaintiffs' ESI disclosures did not comply with Plaintiffs obligations under the Federal Rules and highlighted that Plaintiffs' counsel failed to identify Plaintiffs as custodians of ESI. Plaintiffs responded that they were unable to meet Defendants' requested deadlines but agreed to meet and confer.

11.      The parties agreed to meet and confer on August 24. Because Plaintiffs' counsel had a conflict that precluded continuing the conference, the parties could not fully discuss the disputes. The meet and confer resumed and concluded on August 31.

12.      During the meet and confer and as a threshold matter, Defendants sought to address Plaintiffs' failure to provide or even identify sources of ESI. Plaintiffs' counsel took the position that investigating sources of ESI was too much of a burden for Plaintiffs and refused to discuss

3

whether they had even asked Plaintiffs about the existence of ESI. When Defendants sought to understand the burden involved and inquired about what steps Plaintiffs had taken to identify responsive messages or communications, Plaintiffs asserted that their investigation into the burden was privileged and that they were not required to identify or produce responsive ESI.

13.     Defendants also sought to explain to Plaintiffs that Defendants' discovery, much of it aimed at Plaintiffs' allegations, including whether Plaintiffs' images exist in Defendants' FaceSearch database, is relevant and necessary to assess Plaintiffs' allegations.

14.     Defendants explained throughout the meet and confer that Plaintiffs cannot unilaterally determine whether information is relevant, particularly when that information relates to allegations in the Complaint, class certification, Defendants' affirmative defenses, and Plaintiffs' alleged damages.

15.     Defendants also raised concerns about the lack of specificity in Plaintiffs' objections and the extent to which Plaintiffs conducted any reasonable investigation to respond to Defendants' discovery.

16.     Plaintiffs repeatedly affirmed their position that much of Defendants' discovery was not relevant or that it was unduly burdensome, though Plaintiffs did not specify what about the requests made them burdensome. Plaintiffs further complained about the length of Defendants' letter, despite that its length was directly related to Plaintiffs' deficient responses.

17.     Defendants tried to reach reasonable compromises on a number of issues.  For example, when Plaintiffs objected to the words lawfully and the definition used by Defendants of the word mugshot, Defendants offered to remove the word lawfully from certain Requests For Admission and alter its definition of the word mugshot in a way acceptable to Plaintiffs if that

would allow Plaintiffs to admit to the Requests for Admission even though Defendants disagreed with Plaintiffs on the issue. Plaintiffs would not commit to changing their response.

18.     In another example, when Defendants explained to Plaintiffs that they wanted to know the other names their clients used to investigate the truth of the allegations that Plaintiffs images were included in the FaceSearch Gallery, Plaintiffs accused Defendants of only wanting the information to harass the Plaintiffs about potential gang affiliations.

19.     On some issues, the parties seemed close to resolution, and Defendants understood that Plaintiffs had agreed to supplement their answers to certain discovery, for example on information related to communications between third parties and Plaintiffs concerning this litigation.

20.     On the majority of issues—and on the issues identified in the concurrently filed motion—Plaintiffs' simply refused to concede that the information sought was relevant, despite Defendants' explanations to the contrary, including reminders that the scope of discovery is broad.

21.     In other instances, for example after Defendants provided authority demonstrating that Plaintiffs' position on producing retainer agreements was contrary to law, Plaintiffs suggested that Defendants use alternative means to obtain the information, like depositions.

22.     In attempts to narrow the issues in dispute, Defendants also asked whether particular documents or information existed at all because Defendants did not wish to move to compel materials that did not exist. Plaintiffs took the position that it was too great a burden to investigate whether responsive material existed or likely existed because any investigation for that material that was not relevant or proportional discovery. When pressed for further information on Plaintiffs' diligence in responding to Defendants' discovery, Plaintiffs indicated that their investigation was protected work product.

23.     Defendants requested that Plaintiffs respond to the outstanding issues identified in Defendants' August 9 letter by September 3. Plaintiffs waited until September 8, responding with their own letter. Attached hereto as **Exhibit 17** is a true and accurate copy of Plaintiffs' September 8 letter.

24.     The September 8 letter affirmed Plaintiffs' position that they largely did not have to comply with Defendants' discovery requests. Plaintiffs' counsel refused to acknowledge the relevance of many of Defendants' discovery requests, asserting that Defendants' theory of the case was "offensive" and that their discovery has "nothing to do with the actual factual or legal issues in the case."

25.     Defendants believed many issues that were discussed at the meet and confer were close to resolution.   For example, Defendants understood that Plaintiffs committed to supplementing their responses to the Requests to Admit to either admit or deny that Plaintiff Lewis had pled guilty to criminal offenses on multiple occasions. Plaintiffs indicated they would supplement their response once they obtained and reviewed certified copies of convictions. Plaintiffs' September 8 letter walked back many commitments to provide supplemental responses, including the example above, asserting that they must first determine whether the information was relevant.

I declare under penalty of perjury the foregoing is true and correct.

Executed on: September 14, 2021                               By: _/s/ Jason M. Bradford_

6