# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNY FLORES, ARIEL GOMEZ and DERRICK LEWIS, for themselves and others similarly situated, | ) ) ) | |
| | ) | Case No. 1:20–cv–01128 |
| Plaintiffs, | ) | |
| | ) | Judge Charles R. Norgle, Sr. |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey I. Cummings |
| MOTOROLA SOLUTIONS, INC. and VIGILANT SOLUTIONS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ............................................................... 3

    A.    Vigilant's Development Of The Booking Photo Gallery .......................... 3

    B.    The FaceSearch Technology ................................................................... 4

    C.    Defendants Contract Only With Government Agencies To Provide The Ability To Search Booking Photos ......................................................... 5

    D.    The Use Of Plaintiffs' Photos In The Booking Photo Gallery ................ 6

    E.    Plaintiffs' Claims ................................................................................... 7

ARGUMENT .............................................................................................................. 7

I.    EACH INDIVIDUAL PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE GOVERNMENT-CONTRACTOR EXEMPTION. .......................................... 8

    A.    The Government-Contractor Exemption Precludes Claims For Violation Of BIPA Against Government Contractors When Working For Government Agencies. ......................................................................... 8

    B.    Vigilant's Alleged Actions With Respect To The Booking Photos Of Each Individual Plaintiff Are Covered By The Government-Contractor Exemption. .......................................................................................... 10

    C.    The Court Should Construe the Government-Contractor Exemption To Apply To Work Done for Governmental Agencies Outside Illinois. .... 11

II.    EACH INDIVIDUAL PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE FIRST AMENDMENT. .................................................................................. 14

    A.    Defendants' Services Are Speech Protected By The First Amendment. ............... 15

    B.    Plaintiffs' Claims Do Not Survive Application Of Strict Scrutiny. ...... 17

    C.    Even Under A Commercial Speech Analysis, The Individual Plaintiffs' Claims Do Not Survive Intermediate Scrutiny. .................................... 19

III.    THE DORMANT COMMERCE CLAUSE AND OTHER INTERGOVERNMENTAL DOCTRINES PRECLUDE PLAINTIFFS' CLAIMS ......... 20

A. The Individual Plaintiffs' Claims Regarding Vigilant's Non-Illinois Customers Are Precluded On A *Per Se* Basis Under The Commerce Clause..............................................................................................22

B. Even Under The *Pike* Balancing Test, The Individual Plaintiffs' Claims Violate The Commerce Clause. ..............................................................24

C. Doctrines Of Intergovernmental Sovereignty Preclude The Individual Plaintiffs' Claims Related To Vigilant's Services Supplied To The Federal Government Or Tribes. ..........................................................25

IV. SUMMARY JUDGMENT IS APPROPRIATE ON EACH PLAINTIFF'S UNJUST ENRICHMENT CLAIM.........................................................................26

CONCLUSION...................................................................................................28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Boeing Co. v. Movassaghi,*
   768 F.3d 832 (9th Cir. 2014) ............................................25, 26

*Brown-Forman Distillers Corp. v. New York State Liquor Authority,*
   476 U.S. 573 (1986) ............................................20, 21

*Camps Newfound/Owatonna v. Town of Harrison,*
   520 U.S. 564 (1997) ............................................22, 23

*City of Country Club Hills v. United States Department of Housing and Urban Development,*
   No. 99 C 7139, 2001 WL 1117276 (N.D. Ill. Sept. 17, 2001) ............................................25

*Cox Broadcasting Corp. v. Cohn,*
   420 U.S. 469 (1975) ............................................15, 16

*Dean Foods Co. v. Brancel,*
   187 F.3d 609 (7th Cir. 1999) ............................................22

*Dex Media W., Inc. v. City of Seattle,*
   696 F.3d 952 (9th Cir. 2012) ............................................15

*Enriquez v. Navy Pier, Inc.,*
   No. 2020-CH-07340 (Cook County Cir. Ct. Ill. Oct. 7, 2021) ............................................9, 10

*Fumarolo v. Chicago Board of Education,*
   566 N.E.2d 1283 (Ill. 1990) ............................................12, 13

*Haynes v. Alfred A. Knopf, Inc.,*
   8 F.3d 1222 (7th Cir. 1993) ............................................16

*Health Systems Agency of Northern Virginia v. Virginia State Board. of Medicine,*
   424 F. Supp. 267 (E.D. Va. 1976) ............................................15

*Healy v. Beer Institute,*
   491 U.S. 324 (1989) ............................................21

*Karlin v. Foust,*
   188 F.3d 446 (7th Cir. 1999) ............................................14

*Kassel v. Consolidated Freightways Corp. of Delaware,*
   450 U.S. 662 (1981) ............................................24

*Khan v. Deutsche Bank AG*,
    978 N.E.2d 1020 (Ill. 2012) ........................................................................................9, 10

*Legato Vapors, LLC v. Cook*,
    847 F.3d 825 (7th Cir. 2017) .......................................................................................22, 23

*Martis v. Grinnell Mutual Reinsurance Co.*,
    905 N.E.2d 920 (Ill. App. Ct. 2009) ...................................................................................26

*Mayo v. United States*,
    319 U.S. 441 (1943) ............................................................................................................24

*Midwest Title Loans, Inc. v. Mills*,
    593 F.3d 660 (7th Cir. 2010) .................................................................................21, 22, 23

*Montana v. United States*,
    450 U.S. 544 (1981) ............................................................................................................26

*Morley-Murphy Co. v. Zenith Electronics Corp.*,
    142 F.3d 373 (7th Cir. 1998) .............................................................................................21

*Mulligan v. QVC, Inc.*,
    888 N.E.2d 1190 (Ill. App. Ct. 2008) .................................................................................26

*Nieman v. VersusLaw, Inc.*,
    512 F. App'x 635 (7th Cir. 2013) .................................................................................16, 19

*Pearson v. Edgar*,
    153 F.3d 397 (7th Cir. 1998) .............................................................................................19

*People v. Lieberman (in Re Detention of Lieberman)*,
    776 N.E.2d 218 (Ill. 2002) .................................................................................................12

*People v. Shephard*,
    605 N.E.2d 518 (Ill. 1992) .................................................................................................14

*People v. Simpson*,
    25 N.E.3d 601 (Ill. 2015) ...................................................................................................13

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ...............................................................................................21, 23, 24

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ......................................................................................................17, 18

*Ryan v. Board of Trustees of the General Assembly Retirement System*,
    924 N.E.2d 970 (Ill. 2010) .................................................................................................13

*Salima v. Scherwood South, Inc.*,
   38 F.3d 929 (7th Cir. 1994) ....................................................................7

*Smith v. Daily Mail Publishing Co.*,
   443 U.S. 97 (1979)..................................................................................16

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)..........................................................................15, 18

*Thornley v. CDW-Government, LLC*,
   No. 2020-CH-04346 (Cir. Ct. Cook County, Ill. June 25, 2021) .................9, 10, 11

*United States v. Arcata*,
   629 F.3d 986 (9th Cir. 2010) ............................................................25, 26

*United States v. Caira*,
   833 F.3d 803 (7th Cir. 2016) ............................................................18, 19

*United States v. Emmett*,
   321 F.3d 669 (7th Cir. 2003) ................................................................19

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976)...............................................................................19

*Vrdolyak v. Avoo, Inc.*,
   206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...................................................17

*Willan v. Columbia County*,
   280 F.3d 1160 (7th Cir. 2002) ...............................................................16

*Williams v. Lee*,
   358 U.S. 217 (1959)...............................................................................26

## Constitutional Provisions & Statutes

U.S. CONSTITUTION ........................................................................... *passim*

U.S. CONSTITUTION art. I, § 8, cl. 3 (Commerce Clause) .................................... *passim*

U.S. CONSTITUTION art. VI, cl. 2 (Supremacy Clause) ........................................ *passim*

U.S. CONSTITUTION amend. I ............................................................. *passim*

5 ILCS 140/2.15(a) .........................................................................4

5 ILCS 160/4a(a)(1)...............................................................4, 16, 17

740 ILCS 14/5............................................................................8, 9, 12

740 ILCS 14/10 ...................................................................................................8, 9

740 ILCS 14/15(b) ...................................................................................................7

740 ILCS 14/25(c) .................................................................................................18

740 ILCS 14/25(e) ........................................................................................ *passim*

Ill. Pub. Act. 095-0994 ...........................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56(a) ...............................................................................................7

Illinois House of Representatives, 95th General Assembly (2008), Hearing
    Transcript .....................................................................................................9

Senate Bill 2400, 95th General Assembly (Ill. 2008) ..............................................8, 12

## INTRODUCTION

Defendants Motorola Solutions, Inc. ("Motorola") and Vigilant Solutions, LLC ("Vigilant") bring this motion for summary judgment against the individual claims of Plaintiffs Flores, Gomez, and Lewis. If new proposed Plaintiffs Sanders and Simmons are added to this case before the disposition of this motion, Defendants also move against the individual claims of those Plaintiffs.

Defendants are in the business of providing technology to government agencies, such as police departments, which those agencies use in policing and other public safety activities. Plaintiffs' claims in this case arise from Vigilant (and after it acquired Vigilant in 2019, Motorola) creating and providing government agencies with access to a gallery of publicly available criminal booking photos and with technology that permits a government agency to search that booking photo gallery to identify potential matches to a photo of a suspect, victim, or witness. Defendants have contracted only with government agencies to provide access to the booking photo gallery.

Each Plaintiff alleges that Defendants violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and is liable for unjust enrichment, by including a booking photo of each Plaintiff (and facial information drawn from those photos) in the booking photo gallery, making each booking photo available for government agencies to search and see, and providing government agencies with technology to do so.

Plaintiffs' individual claims, however, fail on the law and undisputable facts. Indeed, Plaintiffs survived a motion to dismiss only by wrongly alleging that Defendants "sold their product to private businesses and other third parties." Because that allegation is contrary to the undisputed facts, and for the other reasons articulated below, there are four independent bases for this Court to grant summary judgment and dismiss these Plaintiffs' individual claims:

First, BIPA expressly provides that the statute does not apply to government contractors, subcontractors, or agents (together, "government contractor") working for government agencies. 740 ILCS 14/25(e). Everything that Defendants are alleged to have done with each booking photo of the Plaintiffs was done while Defendants were working as a government contractor for law enforcement agencies in Illinois, among other governmental agencies. Defendants did not draw any information (including any alleged biometric data) from any of the booking photos of the Plaintiffs until after they were working as a government contractor, including for Illinois government agencies. And Defendants have exclusively contracted with government agencies to provide access to the booking photo gallery—*i.e.*, Defendants have not sold access to the booking photo gallery to private businesses (as Plaintiffs falsely alleged). Defendants anticipate that Plaintiffs may argue that the government-contractor exemption only applies when Defendants are working as a contractor for government agencies in Illinois, and not for government agencies outside Illinois, but the statute makes no such distinction. In all events, BIPA should be interpreted to avoid the constitutional deficiencies that would arise if the statute allowed government contracts in Illinois but penalized government contracts outside Illinois.

Second, each of the booking photos that each Plaintiff alleges Defendants misused was a *public government record*, required to be published to the public under Illinois statutes. The First Amendment to the United States Constitution protects absolutely Defendants' right to draw information from public records (*i.e.*, government-published booking photos of each Plaintiff) and communicate that information to its government customers. The First Amendment thus independently precludes all of Plaintiffs' individual claims. In addition, there is no basis consistent with the First Amendment to interpret BIPA to exempt Defendants' work for government agencies in Illinois but penalize the same work for government agencies outside Illinois.

Third, and independently, the Commerce Clause and the Supremacy Clause of the United States Constitution also do not allow BIPA to be enforced in a manner that allows Defendants to provide their services to Illinois-based government agencies but disallow Defendants from providing the very same services to government agencies outside Illinois. The Court should construe BIPA to avoid that constitutional defect (as well as the First Amendment defect) or, alternatively, hold that the individual Plaintiffs' claims are precluded.

Fourth, Plaintiffs' unjust enrichment claims fail for the lack of any underlying BIPA claim.

For each reason, the Court should enter summary judgment for Defendants on Plaintiffs' individual claims.

## STATEMENT OF UNDISPUTED FACTS

### A.    Vigilant's Development Of The Booking Photo Gallery

Vigilant specializes in developing technology for law enforcement, public safety, and other government customers. (Defendants' LR 56.1 Statement of Undisputed Material Facts ("Statement of Facts") ¶ 7.) Motorola acquired Vigilant in January 2019.[1] (*Id.* ¶ 8.) Vigilant's primary business has been and is selling license plate recognition technology to government agencies throughout the United States, including in Illinois. (*Id.* ¶ 9.)

Through its license plate recognition business, Vigilant developed strong relationships with many government agencies, including law enforcement customers in Illinois. (*Id.* ¶ 10.) And through that work, Vigilant learned that additional technologies—including a gallery of public booking photographs, and tools to efficiently search through them to identify potential matches—

---

[1] Plaintiffs improperly lump Vigilant and Motorola together as "Defendants" in their pleadings and do not describe which alleged acts Plaintiffs attribute to Vigilant, Motorola, or both. All of the bases for summary judgment described herein apply to both Motorola and Vigilant, and both Motorola and Vigilant are entitled to summary judgment in their favor on Plaintiffs' individual claims.

would be valuable and of interest to law enforcement, public safety, and other government agencies. (*Id.* ¶ 11.)

In Illinois, booking photos are deemed public records under state law and are published by state and local government agencies. *E.g.*, 5 ILCS 160/4a(a)(1) (when "an individual is arrested," that person's photograph "*must* be made available to the news media for inspection and copying") (emphasis added); *see also* 5 ILCS 140/2.15(a) (requiring booking photos to be made available to the public upon request).

To create its booking photo gallery, Vigilant obtained publicly available booking photos from third party vendors beginning in Fall 2014. (Statement of Facts ¶ 12.) After obtaining these booking photos, Vigilant uploaded the photos to its servers, analyzed the photos to draw information from them in order to be able to search and compare the photos, and compiled the photos and information into a gallery that government agencies could search. (*Id.* ¶ 13.) The facts regarding Vigilant's receipt and upload of booking photos of the Plaintiffs are set out below.

**B.     The FaceSearch Technology**

Vigilant also developed technology to efficiently search through photos to identify potential matches, including FaceSearch. (*Id.* ¶ 14.) Vigilant contracted to provide its government agency customers with access to FaceSearch and the ability to search through a gallery of booking photos. (*Id.* ¶ 15.) Using those technologies, a government agency could compare a "probe image" obtained by the agency (*e.g.*, an image of a robbery suspect) with the booking photos contained in the gallery.[2] (*Id.* ¶ 17.) FaceSearch performs that comparison by analyzing and comparing certain

---

[2] In addition, a government agency can create its own "gallery" to be searched by uploading images it selects (such as its own booking photos, to the extent those photos are not already contained in the Vigilant booking photo gallery). (Statement of Facts ¶ 16.)

facial characteristics of the subjects in the probe images and in the photos being searched. (*Id .*¶ 18.) In performing its comparisons, FaceSearch only uses information that is shown in the photo itself. (*Id.* ¶ 19.) FaceSearch does not use any information about a person's face that is not contained in the photo itself. (*Id.* ¶ 20.)

In response to a search of booking photos performed by a government agency, FaceSearch provides the government agency only with potential matches, confidence intervals indicating the strength of the matches, and the information associated with the potential matches (*e.g.*, name, jurisdiction creating the booking photo, and sometimes conviction information). (*Id.* ¶ 21.)

### C. Defendants Contract Only With Government Agencies To Provide The Ability To Search Booking Photos

Defendants have not contracted with anyone other than government agencies to provide access to the booking photo gallery. (*Id.* ¶ 22.) Government agencies use their access to the booking photo gallery for a variety of investigative activities, including identifying potential crime suspects and victims. (*Id.* ¶ 23.)

During the entire time period pertinent to Plaintiffs' individual claims, Vigilant has been a government contractor providing government agencies in Illinois with the ability to search and compare booking photos. (*Id.* ¶¶ 24, 34.) For example, on September 25, 2014, the Wilmette Police Department ("Wilmette PD") contracted to purchase a software package from Vigilant that included access to "FaceSearch facial recognition," the ability to search a "Facial Recognition gallery," and ongoing "software upgrades" and "utilities released within the product evolution." (*Id.* ¶ 25; Ex. 2 at Ex. A.) Vigilant also had similar contracts to provide those services to government agencies outside Illinois, such as a contract with the Beaumont, California, Police Department dated June 24, 2014 to provide "FaceSearch Hosted Facial Recognition" among other products. (*Id.* ¶ 26; Ex. 2 at Ex. B.)

Vigilant currently has active contracts with government agencies in Illinois to provide access to the booking photo gallery and with tools to search it, including FaceSearch. (*Id.* ¶ 27.) Vigilant also has active contracts with government agencies outside Illinois to provide access to the booking photo gallery and with tools to search it, including FaceSearch. (*Id.* ¶ 28.) In addition, Vigilant has subcontracts with government prime contractors to provide government agencies, such as the FBI, with access to the booking photo gallery and with tools to search it. (*Id.* ¶ 29.)

**D.     The Use Of Plaintiffs' Photos In The Booking Photo Gallery**

Defendants have conducted a search to determine whether government booking photos of Plaintiff Johnny Flores, Plaintiff Ariel Gomez, Plaintiff Derrick Lewis, prospective Plaintiff Rodell Sanders, or prospective Plaintiff Irene Simmons were or are included in the booking photo gallery. (*Id.* ¶ 30.)

Booking photos of Ariel Gomez and Irene Simmons have not been included in the booking photo gallery at any time. (*Id.* ¶ 31.) Booking photos of Johnny Flores, Derrick Lewis, and Rodell Sanders have been included in the booking photo gallery. (*Id.* ¶ 32.) The first time that Vigilant obtained any information from a face in a booking photo of one of those Plaintiffs was September 30, 2014. (*Id.* ¶ 33.) As of September 30, 2014, Vigilant was working as a government contractor. (*Id.* ¶¶ 24-25.) Among other things, as described above, on September 25, 2014, the Wilmette PD contracted for access to "FaceSearch facial recognition," and the ability to search a "Facial Recognition gallery." (*Id.* ¶ 25; Ex. 2 at Ex. A.)

Since first adding Plaintiffs' booking photos to the booking photo gallery, Vigilant has at all times had contracts with government agencies in Illinois to provide the ability to search booking photos. (*Id.* ¶ 34.)

6

### E.      Plaintiffs' Claims

Plaintiffs allege that Defendants violated BIPA by obtaining and using information drawn from Plaintiffs' booking photos in the booking photo gallery and by providing Defendants' customers with access to the booking photos and the information drawn from those photos.  (Dkt. 6, Am. Compl. ¶¶ 4, 8.)  BIPA imposes requirements on "private entities" that "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information," *see* 740 ILCS 14/15(b), or are "in possession of" biometric identifiers or biometric information.  *See id.* §§ 15(a), (c), (d), and (e).  "Biometric identifiers" include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."  *Id.* § 10.

The General Assembly included in BIPA provisions exempting certain types of private entities entirely from the reach of the statute and limiting its application to others.  Importantly for purposes of this case, BIPA's Section 25 provides that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government."  *Id.* § 25(e).

Plaintiffs also allege an unjust enrichment claim that relies upon Defendants' alleged BIPA violations.  (Dkt. 6, Am. Compl. ¶¶ 100-09.)

### ARGUMENT

Summary judgment should be entered in favor of Defendants on each of Plaintiffs' individual claims.  Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir. 1994).

Here, the undisputed facts require summary judgment because: (i) the alleged actions of Defendants regarding booking photos of Plaintiffs all were taken when working as a government contractor for government agencies within and outside Illinois, and therefore are exempt from

BIPA under the government-contractor exemption; (ii) Plaintiffs' individual claims are precluded by the First Amendment; (iii) Plaintiffs' individual claims are precluded by the Commerce Clause and the Supremacy Clause; and (iv) Plaintiffs' unjust enrichment claims fail for the lack of any underlying BIPA claim.

## I. EACH INDIVIDUAL PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE GOVERNMENT-CONTRACTOR EXEMPTION.

Summary judgment should be entered in favor of Defendants on each of the Plaintiff's individual claims because all of the alleged actions of Defendants relating to Plaintiffs' booking photos that Plaintiffs contend violate BIPA are exempt under BIPA's government-contractor exemption. As demonstrated below, the undisputed facts establish that, at all times when Vigilant drew information from booking photos of Plaintiffs, Vigilant was working as a government contractor exclusively for government customers, both within and outside Illinois. Plaintiffs' individual claims thus are entirely foreclosed by the government-contractor exemption.

### A. The Government-Contractor Exemption Precludes Claims For Violation Of BIPA Against Government Contractors When Working For Government Agencies.

In enacting BIPA, the Illinois General Assembly made clear that it did not wish to restrict government agencies from using biometric technologies, or to restrict private contractors from providing such technologies to the government. As originally introduced, the bill that became BIPA restricted the use of biometric data by *both* a "private entity" and a "public agency." SB2400, 95th Gen. Assemb. (Ill. 2008), available at https://www.ilga.gov/legislation/fulltext.asp?DocName=09500SB2400&GA=95&SessionId=51&DocTypeId=SB&LegID=36373&DocNum=2400&GAID=9&SpecSess=&Session=. But, before passage, the General Assembly amended the bill to strike all restrictions applicable to a public agency's collection, possession, or use of biometric data. *See* Ill. Pub. Act. 095-0994. The restrictions contained in the final statutory text

apply only to a "private entity," which is defined to exclude any "State or local government agency." 740 ILCS 14/5, 14/10.

As a corollary to BIPA's exemption for government agencies, the statute also exempts contractors providing technology to those agencies. Speaking on the Illinois House floor shortly before BIPA was passed, Representative Kathy Ryg explained that the bill "provides exemptions as necessary for . . . private subcontractors working for a state or local unit of government[.]" Ill. H.R., 95th General Assembly (2008), H. Tr. at 248-49 (statement of Rep. Kathy Ryg), available at https://www.ilga.gov/house/transcripts/htrans95/09500276.pdf. In particular, Section 25(e) of BIPA provides: "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e).

Courts interpreting Section 25(e) have found it should be read broadly. For example, one Illinois court held that "the government-contractor exemption under section 25(e) of BIPA may be understood as applying to *one whom a state agency or local unit of government engages to . . . provide services concerning biometric identifiers*." *Thornley v. CDW-Government, LLC*, No. 2020-CH-04346 (Cir. Ct. Cook County, Ill. June 25, 2021), Order at 4 (emphasis added) (referencing dictionary definitions). (Ex. 3 at Ex. A.) Similarly, another Illinois court interpreting Section 25(e) recently found that, "in order to be a contractor" under the statute, a company must only "be a party to a contract [with a government agency] and, the contract must involve one party (the contractor) doing work or supplying goods to the other party." *Enriquez v. Navy Pier, Inc.*, No. 2020-CH-07340 (Cook County Cir. Ct. Ill. Oct. 7, 2021), Order at 3. (Ex. 3 at Ex. B.) Those findings are consistent with the principle that, absent a statutory definition, terms in statutes should

9

be given their "popularly understood meaning[s]." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1043 (Ill. 2012).

Applying that framework, Illinois courts have held that BIPA's government-contractor exemption broadly precludes claims against companies that allegedly obtain, use, or supply biometric data while performing services for governmental agencies. In *Thornley*, for example, the court held that the government-contractor exemption precluded BIPA claims against a company that supplied the Chicago Police Department with access to a facial-recognition database. *Thornley*, Order at 2-3. (Ex. 3 at Ex. A.) Similarly, in *Enriquez*, the court held that the government-contractor exemption applied to a company that contracted with a governmental agency to operate Navy Pier. *Enriquez*, Order at 3. (Ex. 3 at Ex. B.) As part of operating Navy Pier, the defendant used a biometric technology (a fingerprint reader) to have its employees "clock in" and "clock out" of work. *Id.* at 2. The court held that the government-contractor exemption applied because the defendant's contract "obligate[d] [it] to do work for the [governmental agency]" and the use of biometric technology was part of its actions to "support the [agency's] governmental purposes." *Id.* at 3.

As discussed next, the same analysis applies to Vigilant's use of the booking photos of Plaintiffs in connection with Vigilant's work for government agencies.

### B.     Vigilant's Alleged Actions With Respect To The Booking Photos Of Each Individual Plaintiff Are Covered By The Government-Contractor Exemption.

As in *Thornley* and *Enriquez*, Vigilant's actions relating to the alleged biometric data drawn from the booking photos of each individual Plaintiff while working as a contractor for government agencies falls squarely within BIPA's government-contractor exemption. The undisputed facts are as follows:

- During 2014, Vigilant was a government contractor providing government agencies in Illinois with technology to search booking photos. (*See* Statement of Facts ¶¶ 24-25, 34.)

Among other things, on September 25, 2014, Vigilant entered into a contract with the Wilmette PD for access to FaceSearch and the ability to search a facial recognition gallery. (*Id.* ¶ 25.)

- The first time that Vigilant obtained any information from a face in a booking photo of one of the Plaintiffs was September 30, 2014. (*Id.*¶ 33.)

- Since September 2014, Vigilant has at all times had contracts with government agencies in Illinois to provide the ability to search a gallery of booking photos (*Id.* ¶¶ 24-25, 34); and

- Defendants have not contracted with anyone other than government agencies to provide access to the booking photo gallery. (*Id.* ¶ 22.)

Given those undisputed facts, it is clear as a matter of law that Defendants were acting as a "contractor," "subcontractor," or "agent" "working for [a] State agency or local unit of government" when they allegedly took actions relating to booking photos of the individual Plaintiffs that the Plaintiffs contend violated BIPA. 740 ILCS 14/25(e). As in *Thornley*, "a state agency or local unit of government engage[d] [Vigilant] to furnish materials or provide services concerning biometric identifiers," namely, access to the booking photo gallery including booking photos of some of the individual Plaintiffs, and with technology to search the gallery, such as FaceSearch. *Thornley*, Order at 4. (Ex. 3 at Ex. A.) For that reason, the government-contractor exemption contained in Section 25(e) of BIPA precludes each Plaintiff's individual claims.

## C.  The Court Should Construe the Government-Contractor Exemption To Apply To Work Done for Governmental Agencies Outside Illinois.

Defendants anticipate that Plaintiffs may argue that BIPA's government-contractor exemption only applies to contracts with *Illinois*-based governmental agencies, not to contracts with other state, local, or federal agencies. That argument would be mistaken, and in all events would not avoid summary judgment. The history and purpose of BIPA, as well as settled Illinois principles of statutory construction, favor a broad construction of Section 25(e) to encompass work done for all government agencies. Further, construing the exemption to provide for a uniform

treatment of government contracts within and outside Illinois would avoid fatal constitutional defects, as explained in Sections II and III, below. Conversely, if the Court construes BIPA to condition the application of the government-contractor exemption upon whether Defendants' customer is an Illinois or non-Illinois governmental agency, the U.S. Constitution precludes Plaintiffs' claims, as set out below.

The Court should thus construe Section 25(e) of BIPA to apply to contracts with governmental authorities inside and outside Illinois. BIPA does not contain a definition of the phrase "State agency or local unit of government," as used in Section 25(e), requiring the Court to construe those words. *See* 740 ILCS 14/25(e). In general, when construing an Illinois statute, "the primary objective of [the] court . . . is to ascertain and give effect to the intention of the legislature." *People v. Lieberman (In Re Detention of Lieberman)*, 776 N.E.2d 218, 223 (Ill. 2002). "[T]he court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." *Id.* "Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other." *Fumarolo v. Chicago Bd. of Educ.*, 566 N.E.2d 1283, 1302 (Ill. 1990). The court further "presume[s] that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience, or injustice." *Lieberman*, 776 N.E.2d at 224.

Here, consistent with those principles, the government-contractor exemption in Section 25(e) should be construed to apply to contracts with government agencies both inside and outside Illinois. The General Assembly carefully modified the original text of BIPA to make clear that the statute only restricts the use of biometric technologies by a "*private party*," not any "public agency." *Compare* 740 ILCS 14/5, *with* SB2400, 95th Gen. Assemb. (Ill. 2008). The legislature

thus did not intend BIPA to preclude the collection, possession, or use of biometric data by *any* governmental agency, whether organized in Illinois or otherwise. The legislature further understood, as indicated by Section 25(e), that government agencies often enlist private companies to help them perform government functions. Consistent with the General Assembly's decision to exempt *all* public agencies from BIPA's reach, the government-contractor exemption in Section 25(e) is best understood as permitting *all* such agencies to make use of biometric technologies through contracts with private entities that provide goods and services to governments.

Construing Section 25(e) to reach all government contracts is thus consistent with the structure and purpose of BIPA as well as the maxim that a court should "give the statutory language the fullest, rather than the narrowest, possible meaning to which it is susceptible." *People v. Simpson*, 25 N.E.3d 601, 608 (Ill. 2015).[3] Further, construing the exemption to apply to all government contracts rather than just contracts with government agencies in Illinois avoids the absurd result of allowing a government contractor to provide the very same services to one law enforcement agency but not another, depending on whether the law enforcement agency is located in Illinois, or, for example, Wisconsin. In short, nothing in the statute or legislative history indicates that the legislature intended to establish a differential treatment for Illinois and non-Illinois government contracts. The "nature" of the government-contractor exemption, plus "its object and the consequences that would result from construing it one way or the other," all support construing the provision to cover contracts with all state, local, and federal government agencies, not just Illinois agencies. *Fumarolo*, 566 N.E.2d at 1302.

---

[3] *See also Ryan v. Bd. of Trs. of the General Assembly Ret. Sys.*, 924 N.E.2d 970, 973 (Ill. 2010) ("Where the statutory language is clear and unambiguous" courts do not "read into it exceptions, conditions, or limitations that the legislature did not express.").

The Court should construe Section 25(e) to apply to all government contracts for the additional reason that the opposite construction would render BIPA unconstitutional as applied to Defendants. "It is a court's duty to construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible." *People v. Shephard*, 605 N.E.2d 518, 523 (Ill. 1992); *see also Karlin v. Foust*, 188 F.3d 446, 473-74 (7th Cir. 1999) (following state-law principles to construe state law to "avoid constitutional objections"). Here, as discussed in detail in the next section, Defendants' right to provide the same information to its Illinois government customers and its other government customers is protected by the First Amendment. In addition, the Commerce Clause and the Supremacy Clause prohibit the application of BIPA in a manner that allows Defendants to provide services to Illinois-based government customers but prohibits them from providing the very same services to other state and federal government customers. In sum, the Court should construe Section 25(e) to cover Defendants' work for government customers inside and outside of Illinois. Otherwise, as shown next, the U.S. Constitution precludes the individual Plaintiffs' claims. For each reason, summary judgment should be entered on Plaintiffs' individual claims.

## II.     EACH INDIVIDUAL PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE FIRST AMENDMENT.

Even if BIPA could be construed to allow the individual Plaintiffs' claims against Defendants, those claims are precluded by the First Amendment. The booking photos that are at the center of each individual Plaintiff's claims are *government records*, required to be made public under Illinois statutes. At bottom, each Plaintiff seeks to penalize Defendants for drawing information from government records (*e.g.*, facial characteristics that appear in the photos) and communicating that information to Defendants' government agency customers. The First Amendment protects absolutely Defendants' right to draw information from government-

published records and communicate that information to their customers. Nor can there be any constitutionally valid basis for allowing Defendants to communicate that type of information to their Illinois-based government customers but not their government customers in other states. Under any arguable First Amendment analysis, Plaintiffs' claims are precluded.

A.     **Defendants' Services Are Speech Protected By The First Amendment.**

"[T]he creation and dissemination of information are *speech* within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (emphasis added). In *Sorrell*, for example, the Supreme Court struck down Vermont's Prescription Confidentiality Law, which provided that, absent a prescriber's consent, pharmacies and similar entities could not sell or disclose "prescriber-identifying information." *Id.* at 558. The Court rejected arguments that the Vermont law did not regulate speech. *Id.* at 568. Courts have similarly held that the First Amendment protects the dissemination of other information that identifies people, such as information about individuals' names, addresses, phone numbers, and other identifying information. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012) ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272-73, 275 (E.D. Va. 1976) (publication of physician information, including name and phone number, protected).

The right to disseminate information drawn from *government-published records* is especially sacrosanct under the First Amendment. As the Supreme Court held, where a state chooses to "plac[e] the information in the public domain," the state "must be presumed to have concluded that the public interest was thereby being served." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975). Thus, for example, where a state law prohibited the publication of a rape victim's name, but the name was available in official government records, the Supreme Court struck down the law as unconstitutional, holding: "the First and Fourteenth Amendments command

nothing less than that the *States may not impose sanctions on the publication of truthful information contained in official court records* open to public inspection." *Id.* (emphasis added).

The Seventh Circuit has read *Cox* broadly: "The Supreme Court held in *Cox* that the First Amendment creates a *privilege to publish matters contained in public records* even if publication would offend the sensibilities of a reasonable person." *Willan v. Columbia Cty.*, 280 F.3d 1160, 1163 (7th Cir. 2002) (emphasis added). The Seventh Circuit has thus repeatedly found that the First Amendment protects companies that draw information available from records published by the government and offer that information for sale. In *Nieman v. VersusLaw, Inc.*, for example, the plaintiff sued Internet-based companies that offered users the ability to search for information about a person's prior litigation history. 512 F. App'x 635, 636 (7th Cir. 2013). In affirming the dismissal on First Amendment grounds, the Seventh Circuit held that the plaintiff's claims were barred because they were "based on the defendants' republication of documents contained in the public record, so they fall within and are barred by the First Amendment privilege." *Id.* at 638; *see also Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979) (explaining that once "truthful information [is] 'publicly revealed' or 'in the public domain' [a] court [can] not constitutionally restrain its dissemination"); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1233 (7th Cir. 1993) (noting that facts "that are contained in judicial records are beyond the power of tort law to conceal").

Under the same principles, Defendants' conduct in obtaining the government-published booking photos of the individual Plaintiffs, drawing information from those photos, and publishing that information to their customers is *speech* protected by the First Amendment. As noted, booking photos are public records in Illinois: as a matter of state law, when "an individual is arrested," that person's photograph "*must* be made available to the news media for inspection and

16

copying." 5 ILCS 160/4a(a)(1) (emphasis added); *see also id.* § 140/2.15(a) (requiring booking photos to be made available to public upon request). That requirement follows from "the public policy of the State of Illinois," which requires that government records like booking photos be made "available for the *use*, *benefit*, and *information* of the citizens." *Id.* § 160/1.5 (emphasis added).

The First Amendment thus protects Defendants' use of the government-published booking photos of the individual Plaintiffs. In drawing alleged facial-recognition information from such photos, Defendants do nothing more than glean information that is already made public by the government in the photos themselves—*e.g.*, characteristics of the face in the photo. (Statement of Facts ¶¶ 19-20.) Defendants do not utilize any information that is not contained in the photo itself—that is, they only use information that government authorities are legally required to publish. *See* 5 ILCS 160/4a(a)(1); 140/2.15(a). Just as the First Amendment protects companies that glean information from public records to publish various identifying information about individuals as in *Cox* and *Nieman*, it protects Defendants in drawing information from the government-published booking photos of the individual Plaintiffs and publishing that information to its customers.

## B. Plaintiffs' Claims Do Not Survive Application Of Strict Scrutiny.

The First Amendment thus precludes the individual Plaintiffs' claims. Plaintiffs' proposed application of BIPA to Defendants' protected First Amendment speech amounts to a content-based restriction, for which strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015); *see Vrdolyak v. Avoo, Inc.*, 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016). It is a content-based restriction because Plaintiffs' claims hinge on Defendants' use and publication of a specific *type* of information—alleged biometric data that may be gleaned from a government-published booking photo. Plaintiffs' claims also present a "speaker based" restriction that is subject to strict scrutiny

17

because, if the government-contractor exemption only applies to *Illinois* government contractors, it establishes a differential burden depending on whether a government contractor serves Illinois or non-Illinois government customers. Laws that impose burdens on speech and apply only to some speakers, but not others, trigger heightened judicial scrutiny. *E.g.*, *Sorrell*, 564 U.S. at 569-70 ("Vermont's law imposes a content- and speaker-based burden on respondents' own speech. That consideration . . . requires heightened judicial scrutiny.").

BIPA also creates other exemptions for other types of speakers (such as financial institutions), reinforcing that strict scrutiny applies. *See* 740 ILCS 14/25(c). Given that these exemptions treat different speakers differently for the same kind of speech, Plaintiffs' efforts to impose BIPA liability in this case are subject to heightened judicial scrutiny. *See Sorrell*, 564 U.S. at 570-71.

Under strict scrutiny, laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests" to survive. *Reed*, 576 U.S. at 163; *see Sorrell*, 564 U.S. at 571 (fact that law is content-based is "all but dispositive"). Here, Plaintiffs cannot show that applying BIPA to Defendants' use of their booking photos serves a compelling state interest, let alone one that it is narrowly tailored.

There is no "compelling state interest" in restricting Defendants' publication of information it drew from the booking photos of the individual Plaintiffs when: (a) Illinois law requires that the photos and the information contained within them be made publicly available; and (b) BIPA indisputably *allows* Defendants to draw the same identifying information from the booking photos of the individual Plaintiffs and publish it at least when working pursuant to a government contract with an Illinois-based government agency. The stated purpose of BIPA—to protect citizens' privacy—has no application in those circumstances. Information that is available to the general

public is by definition not confidential or "sensitive." *See United States v. Caira*, 833 F.3d 803, 806 (7th Cir. 2016) (recognizing no expectation of privacy in information already disclosed to third-parties); *United States v. Emmett*, 321 F.3d 669, 672 (7th Cir. 2003) ("[W]e think it clear that a person has no expectation of privacy in a photograph of his face."). Plaintiffs' efforts to enforce BIPA against Defendants in this case are thus barred by the First Amendment.

### C. Even Under A Commercial Speech Analysis, The Individual Plaintiffs' Claims Do Not Survive Intermediate Scrutiny.

Because Plaintiffs cannot overcome strict scrutiny, they likely will argue that applying BIPA to Defendants' conduct is subject to the less demanding review associated with regulations of commercial speech. But that would be incorrect. Commercial speech is speech that "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 776 (1976) (Stewart, J., concurring). Defendants' analysis and re-publication of information in the public-record booking photos of the individual Plaintiffs does not propose any commercial transaction. As the Seventh Circuit has held, claims based on "republication" of information contained in government-published records "are barred by the First Amendment privilege." *Nieman*, 512 F. App'x at 638.

Moreover, even if Defendants' speech was commercial, the restrictions imposed by BIPA's application still must survive intermediate scrutiny. *See Pearson v. Edgar*, 153 F.3d 397, 401 (7th Cir. 1998). To pass that test, the government interest in regulating speech (1) must be substantial, (2) the regulation must advance that government interest, and (3) the regulation must be narrowly drawn. *See id.* (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980)). The Seventh Circuit analyzes the second and third prongs together, asking if there is a "reasonable fit" between the restriction on the speech at issue and the "goal to be achieved by that restriction." *Id.* at 402-03.

This test is nowhere near satisfied here.  First, as reviewed above, there is no "substantial interest" in restricting Defendants' re-publication of information that has already been disclosed in booking photos that are public records under Illinois law.  Second, there is no "reasonable fit" between BIPA's restrictions as applied to Defendants and the goal of protecting privacy.  As discussed, the information that Defendants draw from government-published booking photos (*i.e.*, facial characteristics) is already made public when those photos are published pursuant to Illinois law.  Further, BIPA expressly *allows* Defendants to provide biometric data derived from booking photos to at least its Illinois-based government agency customers pursuant to the government-contractor exemption.  740 ILCS 14/25(e).  No "reasonable fit" can be established that would permit Defendants to provide information derived from the booking photos of the individual Plaintiffs to the Wilmette Police Department but not provide the same information to a municipal police department in a neighboring state.

BIPA's other exemptions—such as allowing *financial institutions* to use biometric data from the public booking photos of the individual Plaintiffs, *see id.* 14/25(c)—further confirms the lack of a "reasonable fit" between BIPA's goals and its restrictions as applied in this case.  In short, applying BIPA to penalize Defendants' analysis and re-publication of information contained in the government-published booking photos of the individual Plaintiffs cannot be squared with the First Amendment.  Summary judgment should be entered in Defendants' favor.

## III.  THE DORMANT COMMERCE CLAUSE AND OTHER INTERGOVERNMENTAL DOCTRINES PRECLUDE PLAINTIFFS' CLAIMS.

As an independent matter, Plaintiffs' efforts to enforce BIPA against Defendants in relation to their non-Illinois government contracts violates the Dormant Commerce Clause of the U.S. Constitution.  The Dormant Commerce Clause limits the power of the states to discriminate against or burden interstate commerce.  *See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,

476 U.S. 573, 579 (1986). Here, if BIPA is construed to authorize specific conduct and speech with respect to Illinois government contracts pursuant to Section 25(e) while penalizing the very same conduct and speech with respect to *non*-Illinois government contracts, the statute impermissibly discriminates against businesses supplying services to government authorities located in other states.

The Supreme Court has adopted a two-tier approach for analyzing state regulation under the Commerce Clause. Heightened scrutiny is applied when a statute "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." *Id.* Such regulation is "virtually per se invalid under the Commerce Clause," and in such cases the Court has "generally struck down the statute without further inquiry." *Id.* Heightened scrutiny also applies to "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *See Healy v. Beer Institute*, 491 U.S. 324, 336-37 (1989). Such regulations are invalid under the Commerce Clause without balancing any arguable local benefit against out-of-state burden. *See Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010).[4] The second, more accommodating tier of scrutiny applies when a nondiscriminatory state or local statute has incidental effects on interstate commerce. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Such statutes are subject to a balancing test weighing local benefit against out-of-state burden. *Id.*

---

[4] In the Seventh Circuit, a direct conflict between two state statutes is not required: it is enough that one state lacks a counterpart to the challenged law, indicating that the other state "thinks [the conduct] shouldn't be restricted in the [same] way[.]" *See Midwest Title Loans*, 593 F.3d at 667. Without this rule, "any state that has chosen a policy more laissez faire than [another state's] would have its choices stymied, because the state that has chosen more regulation could always trump its deregulated neighbor." *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 379 (7th Cir. 1998).

Under either approach, applying BIPA to Vigilant's contracts with non-Illinois governmental agencies is unconstitutional. As a related matter, applying BIPA to Vigilant's contracts with federal or tribal governmental agencies would violate doctrines of intergovernmental sovereignty.

### A.  The Individual Plaintiffs' Claims Regarding Vigilant's Non-Illinois Customers Are Precluded On A *Per Se* Basis Under The Commerce Clause.

Plaintiffs' claims based on Vigilant's non-Illinois government contracts would, if permitted, explicitly discriminate against interstate commerce and the interests of other states by allowing Defendants to provide services to Illinois-based governmental authorities but penalizing them for providing the very same services to non-Illinois governmental authorities. Such discrimination is *per se* invalid under the Dormant Commerce Clause. For example, a law encouraging entities to limit their out-of-state clientele, and penalizing the nonresident customers of businesses catering to an interstate market is *per se* invalid. *See Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 567, 571-81 (1997) (holding that a Maine real estate tax provision exempting charitable organizations serving primarily in-state clients from paying a real estate tax but excluding charitable organizations serving primarily out-of-state clients from that exemption violated the Commerce Clause).

Similarly, state law that operates by "regulating or controlling commerce occurring wholly outside [the state's] own borders," is *per se* invalid. *Dean Foods Co. v. Brancel*, 187 F.3d 609, 615-16, 620 (7th Cir. 1999) (invalidating Wisconsin law prohibiting the payment of volume premiums on bulk purchases of Wisconsin-produced milk on transactions occurring outside of state borders). Such laws subject commercial activities to inconsistent legislation between states and are forbidden by the Commerce Clause. *See Midwest Title Loans*, 593 F.3d at 667-68 (holding an Indiana law restricting title loans could not be applied to an Illinois company offering title loans

22

to Indiana residents at its place of business in Illinois, because Illinois had not restricted title loans as Indiana had). Indeed, just the "threat of inconsistent regulation, not inconsistent regulation in fact, is enough to show why [a state] cannot impose [regulations]" outside its borders. *See Legato Vapors, LLC v. Cook*, 847 F.3d 825, 834 (7th Cir. 2017) (finding an Indiana act regulating the manufacture of e-cigarettes liquids, as applied to out-of-state manufacturers, violated the Dormant Commerce Clause).

Here, the same principles forbid the discriminatory and application of BIPA to non-Illinois government contracts when conduct in connection with Illinois government contracts is exempt. Defendants' work for an Illinois police department would be exempt under Section 25(e), but the very same work for a non-Illinois police department would be penalized under the Illinois statute— interstate discrimination, pure and simple. "Avoiding this sort of economic Balkanization and the retaliatory acts of other States that may follow," is one of the "central purposes" of the Dormant Commerce Clause. *Camps Newfound/Owatonna*, 520 U.S. at 577 (internal citations and quotations omitted). Moreover, applying BIPA to penalize contractors like Defendants when they work with non-Illinois governmental authorities would impermissibly regulate commerce and non-Illinois government activity in other states. The Commerce Clause does not allow one state "arbitrarily to exalt the public policy of [that] state over that of another." *Midwest Title Loans*, 593 F.3d at 667-68. Under the U.S. Constitution, non-Illinois state governments have the same right to contract with companies like Defendants as Illinois state and local governments. Enforcing BIPA in a manner that allows Illinois governments the benefits of Defendants' services, but makes it more difficult for other state governments to use the same services, is *per se* invalid.

23

**B. Even Under The *Pike* Balancing Test, The Individual Plaintiffs' Claims Violate The Commerce Clause.**

Even if analyzed under the *Pike* balancing test, Plaintiffs' effort to enforce BIPA in connection with Vigilant's non-Illinois contracts violates the Commerce Clause. In cases such as these, the potential disparate effect of the statute must be balanced against the state's interest in the regulation. *Pike*, 397 U.S. at 142. For example, in *Kassel v. Consolidated Freightways Corp. of Delaware*, the Court applied the *Pike* balancing test to invalidate an Iowa law setting a 55-foot limit for trailers when all nearby states permitted 65-foot trailers. 450 U.S. 662, 665-66, 671 (1981). Because the statute substantially burdened the flow of interstate goods by limiting the travel of vehicles from other states—and the Court found no significant countervailing safety interest—the statute violated the Dormant Commerce Clause. *Id.* at 677-79.

The same result applies here. Applying BIPA to penalize Defendants' provision of services to non-Illinois government customers would substantially burden the ability of contractors like Defendants to serve interstate customers, without any local benefit. As reviewed above, there is no privacy interest in booking photos in Illinois because state law requires those photos—and all of the information that can be drawn from them—to be published to the public. Further, because Section 25(e) authorizes companies like Defendants to (at a minimum) provide biometric data drawn from such photos to Illinois-based government authorities, there is no local benefit to prohibiting the same companies from supplying the same information to non-Illinois state and local governments. Under any applicable test, Plaintiffs' claims related to Vigilant's non-Illinois government contracts are precluded by the Commerce Clause.

**C.      Doctrines Of Intergovernmental Sovereignty Preclude The Individual Plaintiffs' Claims Related To Vigilant's Services Supplied To The Federal Government Or Tribes.**

As a related matter, although Plaintiffs' complaint does not appear to focus on Defendants' services to the federal government or Native American tribes, those services are also not actionable under BIPA pursuant to the Supremacy Clause and doctrines of intergovernmental sovereignty and immunity.

With respect to the federal government, it is axiomatic that "the activities of the federal government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943).    State laws violate intergovernmental immunity by "directly regulat[ing] or discriminat[ing] against the federal government in violation of the intergovernmental immunity doctrine." *See City of Country Club Hills v. U.S. Dept. of Housing and Urban Development*, No. 99 C 7139, 2001 WL 1117276, at *4 (N.D. Ill. Sept. 17, 2001) (citing *North Dakota v. United States*, 495 U.S. 423, 434 (1990)).

As an example, in *Boeing Co. v. Movassaghi*, the Ninth Circuit considered the constitutionality of a state law that imposed uniquely onerous cleanup standards on a federal hazardous waste site.  768 F.3d 832, 836 (9th Cir. 2014).  The law required "responsible part[ies]," including the federal Department of Energy and its contractors, to apply cleanup standards at the site that were more stringent than the state had required for other non-federal projects.  *Id.* at 837, 839.  The Ninth Circuit held that the statute violated intergovernmental immunity because it both regulated the federal government directly and discriminated against the federal government and its contractors.  *Id.* at 839-40, 42.  Similarly, in *United States v. Arcata*, the court struck ordinances purporting to bar the federal government—but not others—from recruiting or promoting the enlistment of minors into the U.S. military.  629 F.3d 986, 988-89, 991-92 (9th Cir. 2010) (finding

that the ordinances discriminated against the federal government by providing for "differential treatment of identical conduct based on the actor's status as a federal agent or employee").

Here, in the same manner, if BIPA is applied to penalize Defendants' conduct in performing subcontracts for the provision of services to federal government customers, it would similarly regulate the United States and discriminate against the federal government by penalizing actions in support of federal government contracts while permitting the very same actions in support of Illinois government contracts. Applying BIPA to work that Defendants perform for the federal government (or as a subcontractor in support of a government contract) would directly interfere with the federal government's ability to contract for services of the type that Vigilant provides. Moreover, if BIPA is applied to allow Illinois government contracts while penalizing federal government contracts, it impermissibly discriminates "based on the actor's status as a federal agent." *Arcata*, 629 F.3d at 991. As in *Boeing*, "[w]hen the state law is discriminatory, a private entity with which the federal government deals can assert immunity." 768 F.3d at 842.

Similarly, Plaintiffs cannot apply BIPA to penalize the services Defendants supply to Native American tribal customers. *See Williams v. Lee*, 358 U.S. 217, 220 (1959) ("[T]he States have no power to regulate the affairs of Indians on a reservation."). It is well settled that "Indian tribes retain inherent sovereign power" and "may regulate . . . the activities of nonmembers who enter consensual relationships with the tribe or its members[.]" *Montana v. United States*, 450 U.S. 544, 565 (1981). For this reason also, summary judgment should be granted.

## IV. SUMMARY JUDGMENT IS APPROPRIATE ON EACH PLAINTIFF'S UNJUST ENRICHMENT CLAIM.

Finally, the Court should grant summary judgment in favor of Defendants on each Plaintiff's claim for unjust enrichment. (*See* Am. Compl. ¶¶ 100-109.) Under Illinois law, "[u]njust enrichment is not a separate cause of action that, standing alone, will justify an action for

recovery." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009).

Thus, a claim for unjust enrichment must be rejected if "the underlying claim . . . is deficient[.]"

*Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1200 (Ill. App. Ct. 2008). Here, for the reasons set forth

above, each of Plaintiffs' claims under BIPA fails on the law and undisputed facts. For that reason,

each Plaintiff's unjust enrichment claim also fails.

**CONCLUSION**

For the reasons stated herein, Defendants respectfully request that the Court grant summary judgment in their favor on all of Plaintiffs' individual claims and dismiss all of those claims with prejudice.

Dated: December 8, 2021                    Respectfully submitted,

                                           DEFENDANTS MOTOROLA SOLUTIONS, INC.
                                           AND VIGILANT SOLUTIONS, LLC

                                           By: */s/ David C. Layden*
                                                    One of their attorneys

David C. Layden
dlayden@jenner.com
Andrew W. Vail
avail@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
312-840-8688