APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENE SIMMONS AND RODELL SANDERS, for themselves and others similarly situated,<br>　　　　　　　　Plaintiffs,<br>v.<br>MOTOROLA SOLUTIONS, INC., and VIGILANT SOLUTIONS, LLC,<br>　　　　　　　　Defendants. | Case No. 20 C 1128<br>Judge Charles R. Norgle, Sr.<br>Magistrate Judge Jeffrey I. Cummings |

*AMICI CURIAE* **BRIEF IN SUPPORT OF DEFENDANTS BY THE ILLINOIS SHERIFFS'
ASSOCIATION AND THE ILLINOIS ASSOCIATION OF CHIEFS OF POLICE**

Richard V. Stewart, Jr.
IL Attorney # 6288780
The Stewart Law Firm, P.C.
1224 Centre West Drive, Suite 400A
Springfield, Illinois 62704
(217) 670-1355
rick@thestewartlawfirmpc.com

*Attorney for the Illinois Sheriff's Association*

Donald R. Zoufal
Legal Advisor
IL Attorney # 6184749
Illinois Association of Chiefs of Police
426 S. 5TH Street
Springfield, IL 62701
(773) 655-3738
don@crowznestconsulting.com

*Attorney for the Illinois Association of Chiefs of Police*

i

# INTEREST OF *AMICI CURIAE*

This case is of interest to all one hundred and two Sheriff's Offices throughout the State of Illinois along with the many municipal police departments in Illinois because the technology at issue in this case is one of the vital tools used by law enforcement to generate leads to identify witnesses to, victims of, and perpetrators of crime.

Since 1928, the Illinois Sheriffs' Association ("ISA") has been dedicated to improving public safety throughout Illinois. The ISA is a non-partisan organization made up of all one hundred and two County Sheriffs of Illinois. The primary mission of the ISA is to assist the Office of Sheriff in each Illinois county by providing Sheriffs and their executive staff with training, communications, and the necessary resources for them to serve local communities more efficiently.

The Illinois Association of Chiefs of Police ("ILACP"), which celebrated its 80th anniversary in 2021, is a voluntary professional organization with over 1,300 members representing over 400 law enforcement agencies across Illinois. Most members of ILACP are executive level members and leaders in law enforcement agencies across Illinois. The jurisdictions in which ILACP members serve include large urban centers employing thousands of police officers, suburban agencies with smaller complements of officers, and rural municipalities that only have a few officers. These agencies almost universally engage in activities investigating crimes, including the collection of information concerning perpetrators of criminal acts, victims of those acts, and witnesses to those acts.

Plaintiffs' lawsuit seeks to misapply the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*, to block law enforcement from continuing to use facial recognition technology provided by government contractors. Indeed, a number of Illinois Sheriff's Offices and municipal police departments have contracted for and used Defendants' "FaceSearch" technology and the

1

ability to access compilations of publicly available booking photos to generate leads to assist in identifying potential perpetrators. Other law enforcement agencies in Illinois use facial recognition technology. Illinois law enforcement agencies sought this technology, value it, and would not be able to otherwise access and utilize it absent private entities, like Defendants, contracting to provide it to government agencies.

The ability to access and search photographic compilations—whether low-tech like the "mug books" of old or high-tech "FaceSearch" or—has long been a critically important tool for law enforcement. The amici's ability to contract with private contractors, like Defendants, to provide technology that they themselves could not create allows them access and use the advances in technology to improve the speed and accuracy of this critically important tool. Plaintiffs' actions in attempting to strip law enforcement agencies of the ability to access booking photo information swiftly, efficiently, and accurately in the database of public records maintained by Defendants will impede criminal investigations. Actions that prevent law enforcement agencies from accessing tools that assist in the effective and efficient administration of justice are of significant interest to the ISA and the ILACP. The ISA and ILACP membership are committed to the best interest of their respective communities and to promoting the highest professional standards for law enforcement activity throughout the state of Illinois.

**ARGUMENT**

Plaintiffs' claims and request for injunctive relief in this case implicate issues of importance to law enforcement, essentially seeking to take away the modern, digital form of an investigative tool—using photographs to assist in the identification of potential criminal suspects—that law enforcement has been using since the 19th Century.

2

**I.     Photographic Comparison is a Longstanding Law Enforcement Investigative Practice**

At first, photographs of criminals were mainly used as a tool to help police identify vagrant people who committed crimes. And then, many prisons in Europe and the United States began systematically photographing incarcerated people, including to help address the use of aliases. In 1858, the New York Police Department opened its first 'rogues gallery' to allow the public to view galleries of mug shots to try to identify criminal offenders. Law enforcement agencies across the globe now use criminal booking or mug shot photographs to help solve crimes.

Advances in technology, photography, and computers has allowed for the development of a tool that allows law enforcement to search millions of mug shots in minutes to help identify a potential criminal suspect. The value of that tool, at a time when our nation faces serious and substantial threats to public safety, including mass shootings, is significant. Indeed, facial recognition has become a commonplace tool for law enforcement at the state, county, and municipal levels in Illinois. Members agencies of the Amici use facial recognition technology for investigations, as do many of the preeminent law enforcement organizations throughout the world. *See, e.g.*, Chicago Police Department "Facial Recognition Technology" *Department Notice D13-11* (August 23, 2013) available at http://directives.chicagopolice.org/#directive/public/6106; New York City Police Department, *NYPD Questions and Answers – Facial Recognition*, available at https://www1.nyc.gov/site/nypd/about/about-nypd/equipment-tech/facial-recognition.page; Interpol, *Facial Recognition*, available at https://www.interpol.int/en/How-we-work/Forensics/Facial-Recognition.; and United States Department of Justice, "Statement of Kimberly J. Del Greco, Criminal Justice Information Services Division, Federal Bureau of Investigation" *Hearing Before* the *Committee on Oversight and Reform U.S. House of Representative* (June 4, 2019) available at https://docs.house.gov/meetings/GO/GO00/20190604/109578/HHRG-116-GO00-Wstate-

DelGrecoK-20190604.pdf. The widespread use of facial recognition technology by federal law enforcement was noted in a 2021 report by the General Accounting Office. See, General Accountability Office, "Facial Recognition Technology: Federal Law Enforcement Agencies Should Better Assess Privacy and other Risks" *GAO Report 21-518* (Jun 29, 2021) available at https://www.gao.gov/assets/gao-21-518.pdf (reporting 20 federal agencies utilizing facial recognition technology, including 15 utilizing the technology provided by private vendors. That private technology includes technology provided by the defendants.) While the GAO Report made some recommendations to enhance oversight of the use of facial recognition technology use, there was no suggestion that such use should be discontinued or that the technology failed to serve an important and legitimate law enforcement purpose. Facial recognition has allowed law enforcement organizations to solve numerous, significant crimes. *See, e.g.*, Jake Parker, *Facial Recognition Success Stories Showcase Positive Use Cases of the Technology*, Security Industry Association (July 16, 2020), available at https://www.securityindustry.org/2020/07/16/facial-recognition-success-stories-showcase-positive-use-cases-of-the-technology/. Including crimes committed here in Illinois. *See,* e.g., Kelly Bauer, "Facial Recognition Software Used To Bust Rush Street Bank Robber, Feds Say." *Chicago Tribune* (June 10, 2016) available at https://www.dnainfo.com/chicago/20160610/gold-coast/facial-recognition-software-used-bust-rush-street-bank-robber-feds-say

    The application of a biometric template to sort through photographs for subsequent review by law enforcement investigators does not change the nature of those photographic comparison.[1]

---

[1] Plaintiffs misapprehend law enforcement's use of Defendants' processes enabling retrieval of publicly available government photographs of individuals at the request of law enforcement. Unlike fingerprint and DNA biometric identifiers, which law enforcement uses to positively establish the identity of individuals, the technology provided by the Defendants is not used to positively establish identity. Instead, it serves as an index and retrieval tool which allows

The technology offered by Defendants, simply serves to expedite the process of selecting photographic images for human comparison. When addressing issues of suspects at large, time is of the essence because the safety of the public is at risk. In a budget-constrained environment, law enforcement agencies would not otherwise possess sufficient personnel resources to examine those photographs and clearly do not have the resources to develop the technology that Defendants offer.

With the pressure of increases in crime in Illinois and across the nation, law enforcement agencies are struggling to investigate crimes. The longer it takes to conclude these investigations, the greater the danger to the public. Delay can also serve to place innocent individuals in peril of wrongful prosecution. Until a crime is solved with the correct person taken into custody, wrongful arrest and prosecution remain a possibility. The relief the Plaintiffs seek in this case, in constraining the use of an available tools for investigation, would be a disservice to the public.

## II. Interference with Governmental Public Safety Efforts is Inconsistent with BIPA

The Illinois General Assembly, in passing BIPA, included provisions to ensure that the law would not impair governmental operations. Section 10 of BIPA provides that the "private entities" subject to the statute do not include "a State or local government agency." 740 ILCS 14/10. Moreover, Section 25 of BIPA makes a broad exception to its coverage for government use of biometric technology, including that provided by government contractors. It provides:

> Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.

---

investigators to utilize large galleries of photographs. The technology simply selects for review by an investigator a smaller array of *photographs* from a *large gallery of photographs* maintained by Defendants. Ultimately it is the investigator, not an algorithm, who determines whether a photograph is a sufficiently close enough match to warrant further investigation. The photographs selected through the application of the technology and offered for consideration by investigators are only one piece of information used in connection with a larger investigative process.

5

740 ILCS 14/25(e); *see also Thornley v. CDW-Government, LLC*, No. 2020-CH-04346 (Cir. Ct. Cook Cnty., Ill. June 25, 2021) (applying Section 25(e) and dismissing BIPA action); *Enriquez v. Navy Pier, Inc.*, No. 2020-CH-07340 (Cir. Ct. Cook Cnty., Ill. Oct. 7, 2021) (same).

The relief Plaintiffs seek, if awarded, would contravene those clear protections. Specifically, in their Complaint, Plaintiffs pray for "[a]n award of equitable, injunctive and declaratory relief for Plaintiffs and members of the proposed Class, including an injunction (i) barring Defendants from any further use of individuals' biometric identifiers and information; (ii) barring Defendants from continuing to collect, capture, obtain, disclose, redisclose, disseminate, and profit from Plaintiffs' and Class Members' biometric identifiers and information; (iii) requiring Defendants to delete and destroy all biometric identifiers and information in their possession, custody, and control; and (iv) requiring Defendants to claw back the biometric identifiers and information from any third parties to whom they disclosed, redisclosed, and disseminated those identifiers and information." (Dkt. 72 at 24) In effect, such relief would preclude law enforcement from using Defendants' technology in investigating crimes.

In other words, under the Plaintiffs' construction of BIPA, law enforcement professionals will be precluded from ready access to otherwise publicly available photographs of individuals who have been arrested or convicted of criminal offenses. As discussed above, those records have long been shown to be useful in criminal investigations. Indeed, Illinois law requires local and State law enforcement to share and make available these images for the purpose of solving crime and informing the public. *See* 5 ILCS 140/2.15(a) (establishing that booking photos shall be made available to the public upon request); *id.* at § 160/4a(a)(1) (establishing that when "an individual is arrested," that person's photograph "must be made available to the news media for inspection and copying."). That is exactly in line with law enforcement using face-matching technology.

# CONCLUSION

Plaintiffs' interpretation of BIPA contravenes the statute's purpose and results in impeding law enforcement investigations. This Court's adoption of that position would impede efficient and effective criminal investigation in a manner inconsistent with public policy. For the reasons stated above, *amici* Illinois Sheriffs Association and Illinois Association of Chiefs of Police urge this Court to reject Plaintiffs' arguments and enter summary judgment in favor of Defendants.

Respectfully submitted,

*Amici Curiae*

Illinois Sheriffs' Association

By: /s/
Richard V. Stewart, Jr.
IL Attorney # 6288780
The Stewart Law Firm, P.C.
1224 Centre West Drive, Suite 400A
Springfield, Illinois 62704
(217) 670-1355
rick@thestewartlawfirmpc.com

Illinois Association of Chiefs of Police

By: /s/
Donald R. Zoufal
IL Attorney # 6184749
Legal Advisor
Illinois Association of Chiefs of Police
426 S. 5th Street
Springfield, IL 62701
(773) 655-3738
don@crowznestconsulting.com