IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENE SIMMONS AND RODELL SANDERS, for themselves and others similarly situated, | ) ) ) Case No. 1:20-cv-1128 |
| Plaintiffs, | ) ) Judge John J. Tharp Jr. |
| v. | ) ) Magistrate Judge Jeffrey I. Cummings |
| MOTOROLA SOLUTIONS, INC., and VIGILANT SOLUTIONS, LLC, | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' L.R. 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS ("PSOAF")**

Defendants Motorola Solutions, Inc. and Vigilant Solutions, LLC, pursuant to LR 56.1, hereby submit this Response to Plaintiffs' LR 56.1 Statement of Additional Material Facts.

1. Rodell Sanders was confined to the Cook County Jail from 2007 through his retrial in 2014. Exhibit 1 (Sanders Declaration) at ¶¶ 3–4.

**RESPONSE:** Defendants admit that Plaintiff Sanders was incarcerated during the years 2007 through 2014, but lack knowledge as to whether he was incarcerated in the Cook County Jail during that entire period, as opposed to in an Illinois Department of Corrections facility or other facility.

2. In 2012 and 2013, Cook County Jail's booking photos were available on the Cook County Sheriff's Department's website. Those photos were available for persons in custody at the time of search. Exhibit 2 (Mills Declaration) at ¶¶ 5–6.

**RESPONSE:** Defendants admit that the Cook County Sheriff publishes booking photos of inmates at the Cook County Jail, but lacks knowledge with respect to how long particular photos are kept on the Sheriff's Department website. Defendants state further that the referenced Mills

declaration does not say that photos of all inmates were available in any particular year; it merely states that Mr. Mills reviewed unspecified photos at unspecified times.

3. In 2013, the Cook County Jail was one the nation's five largest jails. (*See* United States Department of Justice. Office of Justice Programs. Bureau of Justice Statistics. Census of Jails, 2013. https://doi.org/10.3886/ICPSR36128.v4)

**RESPONSE:** Defendants do not deny this contention, but state that it is not relevant or material.

4. Vigilant used a form software licensing agreement that it wrote and which states: that it grants the agency a non-exclusive license to use its software, that Vigilant retains the right to sell the software to whomever it chose, that it prevents the agency from sharing the product with anyone else, that it prohibits the agency from disclosing Vigilant's confidential information, that it obligates the agency not to disparage Vigilant, that it allows Vigilant to terminate the license, that it makes clear that Vigilant was not to be construed to be the agent of the licensee, and that it gives Vigilant the right to make any other business decisions it deemed commercially reasonable, among other provisions that are inconsistent with being a "contractor, subcontractor or agent," of the municipal entity. Dkt. 114-1 at 10-16.

**RESPONSE:** Admitted in part. Vigilant entered into contracts with government authorities, examples of which are in the record at Dkt. 114-1 at Motorola 9346-53; Dkt. 140-1 at Motorola 8401–25; Dkt. 140-2 at Motorola 50106–14. Defendants deny Plaintiffs' characterizations of the terms of those agreements, and respectfully refer the Court to the terms of the agreements themselves. Plaintiffs' assertion about whether Defendants qualify as a "contractor" pursuant to 740 ILCS 14/25(e) is a legal conclusion that is not appropriate for a LR 56.1 statement. "It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008). Nonetheless, as parties working pursuant to contracts with state and local governmental authorities related to facial recognition technology and access to a gallery of booking photos, Defendants are "contractors" for purposes of 740 ILCS 14/25(e). (*See, e.g.*, Dkt. 113, Hodnett Decl. ¶ 10; Dkt. 114, Olive Decl. ¶ 9; Dkt. 114-1 at Motorola 9346–53; Dkt. 140-1 at Motorola 8401–25; Dkt. 140-2 at Motorola 50106–14.)

5. Vigilant's contract with Likeness required it to provide a minimum of 12 million "initial" booking photos within the first week after the agreement became effective. Exhibit 3 (Likeness Data Feed License Agreement, MOTOROLA_39628–39635) at 39629.

**RESPONSE**: Admitted. Defendants further state that the Likeness contract provided that Likeness would supply at least 80,000 new arrest photos per month. (Dkt. 130-3, Pls. SOAF Ex. 3 at Motorola 39629.)

6. The agreement became effective at the earlier of the date on which Vigilant set up its servers and downloaded the entire Likeness database or October 1, 2014. Ex. 3 at 39628.

**RESPONSE**: Admitted.

7. Vigilant's 2014 Facial Recognition Overview is dated 12/19/2014 and states that FaceSearch has over 14.1 million booking photos as of October 2014. Exhibit 4 (2014 Vigilant Solutions Facial Recognition Overview presentation, MOTOROLA_44257–44278) at 44271 (14,177,491 records), 44273 ("over 14.1 million"); Exhibit 5 (Declaration of Matthew J. Thibodeau).

**RESPONSE:** Admitted in part. The Vigilant "Facial Recognition Overview" presentation has a file name containing the date 12-19-2014 and contains a slide on page 44271 entitled "Product Feature – Pre-Populated Gallery," which states "Facesearch includes a pre-populated

gallery of over 14 million records" and that "Agencies may also upload to the gallery and share records with other agencies." (Dkt. 130-4, Pls. SOAF Ex. 4 at Motorola 44271.) The slide also contains a graphic that includes the text: "Results: 14,177,491 Record(s)." (*Id.*)

8.  Accordingly, the reasonable inference is that Vigilant deleted at least 14 million TLO booking photos, because it had 16 million prior to deletion, received at least 12 million from Likeness, and reached 14.1 million by October 2014. Exhibit 6 (2013 Vigilant Solutions' License Plate Reader Data and Facial Recognition for Public Records Solutions MOTOROLA_49297–49315) at 49299 (Vigilant had 16 million booking photos); PSOAF at ¶ 5 (Likeness agreed to provide at least 12 million initial booking photos); PSOAF at ¶ 7 (By December 2014, Vigilant reached 14.1 million booking photos).

**RESPONSE:** Objection and denied. Arguing an alleged "reasonable inference" does not constitute a statement of fact pursuant to LR 56.1 and should be disregarded.

In any event, the "inference" that Plaintiffs attempt to draw is wrong and unsupported by genuine evidence. Plaintiffs appear to be trying to infer the number of photos supplied to Vigilant by TLO prior to September 2014, but none of the numbers contained in Plaintiffs' Paragraph 8 have any relationship to that figure. The "16 million" number that Plaintiffs cite is from a document that was prepared in 2016, long after TLO stopped providing photos to Vigilant, as is indicated by the reference to 06/06/16 date in the file name for that document. (*See* Dkt. 143, Kras Decl. ¶ 4.) Likewise, the "12 million" and "14.1 million" figures that Plaintiffs cite also come from documents that post-date Vigilant's change in vendors from TLO to Likeness. (*See* Dkt. 130-3, Pls. SOAF Ex. 3 at Motorola 39634; Dkt. 130-4, Pls. SOAF Ex. 4 at Motorola 44274–75.) The purpose of these various figures in Plaintiffs' argument is unclear, because none of these numbers suggest that a photo of Plaintiff Sanders was contained in the photos supplied by TLO, but in any event,

the numbers cited in Paragraph 8 do not support an inference regarding the number of photos supplied by TLO.

9. It is also reasonable to infer that Plaintiff Sanders' 2007 booking photo was in the 14 million deleted photos. Prior to deleting the TLO photos, Defendants stated that their jail booking photos came from three sources: sex offender websites, crimestopper websites, and from the online booking photo databases of local agencies from more than half of U.S. states. See RDSF at ¶ 12. Vigilant itself used a web crawler to scrape the CrimeStopper and sex offender websites. RDSF at ¶ 22. Plaintiffs were not charged with any sex offenses, and there is no evidence (nor reason why) they were on a CrimeStopper website. Exhibit 7 (30(b)(6) Dep.) at 82:16–23. Plaintiff Sanders' booking photo from the Cook County Jail would have been available online through its website during the entirety of his custody. *See* Ex. 2 (Mills Declaration) at ¶¶ 5–6.

**RESPONSE:** Objection and denied. Plaintiffs' argument about what is "reasonable to infer" is not a statement of fact pursuant to LR 56.1 and should be disregarded.

In any event, Plaintiffs' alleged "inference" that TLO may have supplied a booking photo of Plaintiff Sanders to Vigilant prior to September 2014 is wrong and unsupported by any evidence. As discussed above in response to Paragraph 8, the various numbers that Plaintiffs reference do not relate to the photos that TLO supplied to Vigilant. It is also not clear why Plaintiffs refer to sex offender websites and "CrimeStopper" websites in Paragraph 9, as Plaintiffs themselves acknowledge in the same paragraph that there is no evidence of a photo of Plaintiffs on those types of sites. The statement in the last sentence of Paragraph 9 that Plaintiff Sanders' booking photo "would have been available online" during the "entirety of his custody" is not supported by the referenced Mills declaration, which does not say anything about Plaintiff Sanders. In short,

Plaintiffs' Paragraph 9 does not identify any genuine evidence that could support an inference about Plaintiff Sanders' photo in relation to photos supplied by TLO.

In addition, Defendants' corporate representative testified unrebutted that the TLO booking photos came from Texas and Florida, not Illinois, where Plaintiff Sanders was arrested. (*See* Dkt. 129-18, Pls' RSOF Ex. 18, 30(b)(6) Tr. 79:12–80:11, 82:10–83:1, 100:14–21, 103:7–11.)

Dated: November 14, 2022

Respectfully submitted,

DEFENDANTS MOTOROLA SOLUTIONS, INC. AND VIGILANT SOLUTIONS, LLC

By: */s/ David C. Layden*
    One of their attorneys

David C. Layden
dlayden@jenner.com
Andrew W. Vail
avail@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
312-840-8688